*Seth v. McDonough*, No. 20-cv-1028-PX
*Plaintiffs' Letter Brief*
May 18, 2020

Dear Judge Xinis,

Plaintiffs respectfully submit this letter brief to explain the application of certain provision of the Prison Litigation Reform Act (PLRA) to the requested relief in this action. Two provisions bear on the relief that Plaintiffs request at this stage.[1] Each is addressed in turn.

### I. The "Need-Narrowness-Intrusiveness" Requirement

Under the PLRA, a court cannot order prospective relief addressing prison conditions unless it "finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A); *see also* § 3626(a)(2).[2] Whether the relief satisfies the "need-narrowness-intrusiveness" requirement is context-specific: "the scope of the order must be determined with reference to the constitutional violations established by the specific plaintiffs before the court." *Brown v. Plata*, 563 U.S. 493, 531 (2011). But as a general matter, a court satisfies this requirement where it corrects the violation of prisoners' rights while allowing the prison or jail as much discretion as possible over its own operations. *See, e.g. id.* at 531; *see also, e.g.*, *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1071 (9th Cir. 2010).

Accordingly, in the COVID-19 context, many federal district courts have ordered corrections facilities to remedy multiple aspects of their conditions while allowing officials the discretion to craft the particulars of those remedies. For example, in *Carranza v. Reams*, the court ordered a jail to (among other things) identify medically vulnerable prisoners and "put in place a plan" to protect them; "implement a plan" to improve sanitation in certain areas; and "formulate a plan" to obtain sufficient masks. No. 20-cv-00977-PAB, 2020 WL 2320174 at *12-15 (D. Colo. May 11, 2020); *see also Martinez-Brooks v. Easter*, 20-cv-569-MPS, 2020 WL 2405350, at *32-34 (D. Conn. May 12, 2020) (ordering Defendant to develop certain plans and that parties confer to implement relief). By contrast, the PLRA does not permit exceedingly specific relief that eliminates discretion in implementation. *See Valentine v. Collier*, 956 F.3d 797, 800, 805–06 (5th Cir. 2020) (noting that an order requiring, *inter alia*, "common surfaces in housing areas, bathrooms, and the dining hall to be cleaned every thirty minutes from 7 a.m. to 10 p.m. with bleach-based cleaning agents" could not be described as "narrowly drawn").

Plaintiffs do not seek the sort of particularized relief ordered by the district court in *Valentine*. Instead, Plaintiffs ask this Court to order the relief necessary to resolve the constitutional violations while permitting Defendant discretion over the implementation of those remedies. *See, e.g.*, Compl. at 45 (asking this Court to order Defendant to "create and implement a plan that complies with CDC Guidance"). This relief is appropriate under the PLRA.

Separately, Plaintiffs note that the PLRA limits the injunctive relief this Court can order; it does not limit this Court's ability to rule whether Defendant's conditions violate the law. This Court can first decide liability and then order the parties to negotiate a remedy. *See, e.g.*, *Braggs v. Dunn*, 257 F. Supp.3d, 1171, 1268 (M.D. Ala. 2017) (Thompson, J.) (finding Eighth Amendment violation and ordering parties to "meet to discuss a remedy"). When an agreement

---

[1] Since this Court indicated that it is not concerned about exhaustion, Plaintiffs have not addressed it here.
[2] The need-narrowness-intrusiveness requirement applies to Claim I. It does not apply to Claim II (over-detention) because it applies to remedies to prison conditions, and Claim II does not concern conditions. If it did apply, the relief requested narrowly targets the violation: the Jail must release people when they are legally entitled to it.

1

between the parties is incorporated into an order, this "constitutes strong evidence" of compliance with the need-narrowness-intrusiveness requirement." *Benjamin v. Fraser*, 156 F. Supp. 2d 333, 344 (S.D.N.Y. 2001); *accord Armstrong*, 622 F.3d at 1071; *Braggs*, 383 F. Supp. 3d at 1253.

In addition, under Fourth Circuit precedent, the PLRA does not limit injunctive relief to "current and continuing" violations. *See Porter v. Clarke*, 923 F.3d 348, 366-68 (4th Cir. 2019). The parties dispute whether Defendant has remedied many of the problems that Plaintiffs alleged in the Complaint (and, ultimately, an evidentiary hearing will be necessary to determine this). However, even if Defendant had corrected all of the Jail's deficiencies, under Fourth Circuit precedent, the PLRA would not bar injunctive relief.[3]

Finally, the appointment of a monitor does not contravene the need-narrowness-intrusiveness requirement so long as it is necessary to remedy the constitutional violations. *See, e.g.*, *Benjamin v. Schriro*, 370 F. App'x 168 (2d Cir. 2010).[4]

## II. Prohibition on "Prisoner Release Orders"

The PLRA bars any "prisoner release order" unless certain stringent requirements are met. 18. U.S.C. § 3626(a)(3)(A). Even when a "prisoner release order" is appropriate, it may only be issued by a three-judge court. *Id.* § 3626(a)(3)(B). But this restriction does not apply here.

***Habeas Relief Under § 2241 (Count III).*** Only one count of the Complaint requests release outright: the medically vulnerable subclass's request for release under § 2241 in Count III. The PLRA's requirements do not apply to habeas proceedings challenging "the fact or duration of confinement in prison," § 3626(g)(4), and Plaintiffs argue that this is precisely what they challenge here. *See* Doc. 44 at 26-28. In these circumstances, multiple federal courts have found that the PLRA does not apply. *See, e.g.*, *Martinez-Brooks v. Easter*, 20-cv-569-MPS, 2020 WL 2405350, at *16-17 (D. Conn. May 12, 2020); Doc. 23-2 at 7, *Wilson v. Williams*, 20-3446 at 3 (6th. Cir. May 4, 2020)*; but see Alvarez v. LaRose*, 20cv782-DMS-AHG, 2020 WL 2315807, at *2-4 (S.D. Cal. May 9, 2020). The Fourth Circuit has not addressed this question; thus, no binding authority dictates this court's conclusion. However, as the *Martinez-Brooks* court described, the better view is that the PLRA is inapplicable here. *Martinez-Brooks*, 2020 WL 2405350, at *16-17.

***Release on Non-Monetary Bond (Enlargement) While § 2241 Claim is Pending (Count III).*** The Medically Vulnerable Subclass members also seek release on non-monetary bond while their § 2241 claims are pending. Circuit courts have consistently recognized the authority to do this. *See Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001); Doc. 3-1 at 33-35 (citing cases). In the COVID-19 context, at least two federal courts have granted bond pending habeas relief to *state court* prisoners. *See Martinez v. DelBalso*, No. CV 19-5606, 2020 WL 1939717, at *1-4 (E.D. Pa. Apr. 22, 2020); *Clark v. Hoffner*, No. 16-11959, 2020 WL 1703870, at *2-5 (E.D. Mich. Apr. 8, 2020). Plaintiffs are aware of no case that has applied the PLRA in these circumstances. Nor should it

---

[3] To vitiate the need for injunctive relief, "courts require 'clear proof' that an unlawful practice has been abandoned." *Porter*, 923 F.3d at 365. In *Porter*, even corrections officials' undisputed "testi[mony] under oath that they had no intention of reverting to the prior conditions" was insufficient to satisfy this standard where the defendants had "declined to commit" to this promise, "despite being offered several opportunities to do so." *Id.* at 365.

[4] The PLRA does restrict the appointment of special masters, § 3626(f); these provisions do not apply to court-appointed monitors who lack quasi-judicial powers. *Plata v. Schwarzenegger*, 603 F.3d 1088, 1096 (9th Cir. 2010).

apply; the PLRA does not apply to habeas actions, *see supra*, and enlargement is not release, *Wilson v. Williams*, 2020 WL 1920882, at *10 (N.D. Ohio Apr. 22, 2020).

***Transfer to Home Detention to Remedy Violations of § 1983 (Count I).*** As part of any conditions relief it orders on Count I, this Court has the option to transfer detainees to home detention.[5] Doc. 3-1 at at 31-33. The PLRA's definition of "prisoner release order" is admittedly broad. § 3626(g)(4). "[Courts] do not, however, construe statutory phrases in isolation; [courts] read statutes as a whole." *United States v. Morton*, 467 U.S. 822, 828 (1984). And when reading the PLRA's restrictions on "prisoner release order" in context, multiple federal courts have concluded that the PLRA's restrictions only apply when the basis for the order is overcrowding. *See Reaves v. Dep't of Corr.*, 404 F. Supp. 520, 523-24 (D. Mass. 2019); *Plata v. Brown*, 427 F. Supp. 3d 1211, 1222-24 (N.D. Cal. 2013); *Mays v. Dart*, 2020 WL 1987007, at *31-32 (N.D. Ill. Apr. 27, 2020; *Money v. Pritzker*, 2020WL 1820660, at *12 n. 11 (N.D. Ill. Apr. 10, 2020).[6] Here, Plaintiffs' allegations do not involve crowding. This Court has the power to transfer prisoners to home detention if necessary to remedy the violations alleged. *See Reaves*, 404 F. Supp. at 210 (transferring prisoner because prison was not "able nor willing to provide for [his] medical needs").

***Over-detention Claim Under § 1983 (Count II).*** To remedy the Jail's over-detention policy, Plaintiffs do request release outright; they ask this Court to enjoin the Jail's policy of illegally detaining COVID-positive people who are legally entitled to release. *See* Doc. 44 at 24 (explaining why this amounts to a policy). "Prisoner release orders" are restricted only in actions about "prison conditions," § 3626(a)(3); this claim is not about conditions. Moreover, if the restrictions on "prisoner release orders" applied to this claim, a federal court could never enjoin a state over-detention policy because a single-judge court can never issue "prisoner release orders," § 3626(a)(3), and a three-judge court can only issue a "prisoner-release order" to remedy a violation caused by over-crowding, § 3626(a)(3)(E)(i). And a state prisoner could not challenge an over-detention in habeas until he was actually unlawfully detained. 28 U.S.C. § 2241(c)(3). This leaves no way to challenge the policy before being harmed by it. Therefore, to the extent its application is ambiguous, interpreting the PLRA to bar relief would violate the doctrine of constitutional avoidance. *Clark v. Martinez*, 543 U.S. 371, 381-82 (2005).[7]

***Plaintiffs' Supplemental Evidence About Prisoners Ordered and Authorized Released (Doc. 61, 61-1).*** Plaintiffs submitted evidence that the Jail is detaining individuals it has been ordered or authorized to release. *See* Doc. 61, 61-1. The import of this evidence is that the Jail's failure to release individuals it has the power to release speaks to whether the Jail has taken reasonable measures to address the dangers of COVID-19, and thus, to the deliberate indifference analysis in Count I. *See Martinez-Brooks*, 2020 WL 2405350, at 22-26 (finding that prison's failure to transfer prisoners to home confinement and exercise compassionate release, despite its authority to do so, supported a finding of deliberate indifference). Because this evidence goes to how the Jail's own decisions impact the deliberate indifference analysis—and not a request for release from this Court—the PLRA's prohibition on "prisoner release orders" is not at issue.

---

[5] Count I does not directly seek release. However, the Court may find that the Jail cannot remedy these violations without removing detainees from the Jail altogether. Plaintiffs have thus outlined this option.

[6] Another federal court found, in the COVID-19 context, that transfers are not "release orders" at all. Doc. 3-2 at 96, *Gray v. County of Riverside*, 13cv444-VAP-OP (C.D. Cal. Apr. 21, 2020).

[7] Alternatively, this Court could find that the restrictions on "prisoner release orders" do not apply because the violation at issue is not overcrowding. *See supra* (discussing this in the context of transfers).

*Seth v. McDonough*, No. 20-cv-1028-PX
*Plaintiffs' Letter Brief*
May 18, 2020

          By:    s/Katherine Chamblee-Ryan
                    Katherine Chamblee-Ryan (*pro hac vice*)
                    Olevia Boykin (*pro hac vice*)
                    Ryan Downer (*pro hac vice*)
                  CIVIL RIGHTS CORPS
                  1601 Connecticut Ave. NW, Suite 800
                  Washington, DC 20009
                  katie@civilrightscorps.org
                  Phone: (610) 931-7715

                  Edward Williams (Bar No. 20944)
                  Cadene Russell Brooks (*pro hac vice*)
                  WILMER CUTLER PICKERING
                  HALE AND DORR LLP
                  1875 Pennsylvania Avenue NW
                  Washington, DC 20006
                  ed.williams@wilmerhale.com
                  Phone: (202) 663-6487

                  *Attorneys for Plaintiffs*