## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **KEITH SETH, *et al.*,** ) | |
| ) | |
|       Plaintiffs, ) | |
| ) | |
| **v.** ) | |
| ) | **Case No. 8:20-cv-01028-PX** |
| **MARY LOU MCDONOUGH,** ) | |
| In her official capacity as Director of ) | |
| the Prince George's County Department ) | |
| of Corrections, ) | |
| ) | |
|       Defendant. ) | |
| ) | |

## DIRECTOR MARY LOU MCDONOUGH'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT OR, ALTERNATIVELY, MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Table of Contents ...................................................................................i

Table of Authorities  .......................................................................... iii

Introduction ........................................................................................1

Plaintiffs' Amended Complaint .............................................................3

Undisputed Relevant Facts .................................................................5

Standard of Review.............................................................................7

Argument...........................................................................................8

    I.       The Released Plaintiffs' Claims are Moot ...............................8

    II.    Plaintiffs Failed to Exhaust the Administrative Grievance Procedures Available at the Facility............................................................10

    III.   Plaintiffs' Over-Detention Claim Fails to State a Claim for Relief .........13

    IV.   Plaintiffs' Habeas Petition Fails to State a Claim ....................................15

    V.    Count IV Fails to State a § 1983 Claim Based on the Lockdown Measures ...................................................................................18

    VI.   The Amended Complaint Fails to State a Due Process Claim.................22

        a.  Director McDonough did not violate Plaintiffs' substantive due process rights.........................................................................22

        b.  Director McDonough did not violate Plaintiffs' procedural due process rights.........................................................................26

    VII.  The Amended Complaint Fails to State a Claim for Injunctive Relief....28

Conclusion ....................................................................................................................33

Certificate of Service .................................................................................................35

## TABLE OF AUTHORITIES

**Cases**

*Alvarez v. Larose,*
  --- F.Supp.3d ---, Case No.: 20-cv-00782-DMS (AHG) (S.D. Cal. May 12, 2020) ...............................................................................................................17

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) .................................................................................7

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007).............................................................. 8, 19, 20, 25

*Bell v. Wolfish,*
  441 U.S. 520 (1979) ........................................................................ 29, 30

*Booth v. Churner,*
  532 U.S. 731 (2001) ...............................................................................12

*Braddy v. Wilson,*
  580 F. App'x 172 (4th Cir. 2014) .........................................................16

*Cagle v. Hutto,*
  177 F.3d 253 (4th Cir. 1999)..................................................................29

*Catawba Riverkeeper Found. v. N.C. Dep't of Transp.,*
  843 F.3d 583 (4th Cir. 2016)....................................................................9

*Deal v. Mercer Cnty. Bd. of Educ.,*
  911 F.3d 183 (4th Cir. 2018)..................................................................14

*Dilworth v. Adams,*
  841 F.3d 246 (4th Cir. 2016)............................................................ 23, 27

*EEOC v. Perf. Food Grp., Inc.,*
  16 F. Supp. 3d 584 (D. Md. 2014) ..........................................................8

*Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington,*
  566 U.S. 318 (2012) ...............................................................................21

*Francis v. Giacomelli,*
  588 F.3d 186 (4th Cir. 2009)....................................................................8

*Greene v. Lau,*
 Civil Action No. RDB-19-1217 (D. Md. Sept. 24, 2019)......................................12

*Greensboro Prof. Fire Fighters Ass'n, Local 3157 v. City of Greensboro,*
 64 F.3d 962 (4th Cir. 1995)....................................................................................15

*Hallinan v. Scarantino,*
 --- F.Supp.3d ---, No. 5:20-HC-2088-FL, (W.D.N.C. June 11, 2020) ...............17

*Hill v. Robeson Cnty., N.C.,*
 733 F. Supp. 2d 676 (E.D.N.C. 2010) ...................................................................19

*Hines v. Anderson,*
 547 F.3d 915 (8th Cir. 2008)..................................................................................33

*Hunter v. Town of Mocksville, N.C.,*
 897 F.3d 538 (4th Cir. 2018)..................................................................................15

*In re Long Term Admin. Seg. of Inmates Designated as Five Percenters,*
 174 F.3d 464 (4th Cir. 1999)..................................................................................21

*Incumaa v. Ozmint,*
 507 F.3d 281 (4th Cir. 2007)..............................................................................9, 10

*Incumaa v. Stirling,*
 791 F.3d 517 (4th Cir. 2015) ...................................................................24, 25, 28

*Inmates v. Owens,*
 561 F.2d 560 (4th Cir. 1977)............................................................................14, 19

*Jones v. Bock,*
 549 U.S. 199 (2007) ...............................................................................................11

*Kentucky v. Graham,*
 473 U.S. 159 (1985) ...............................................................................................14

*Kilpatrick v. Hollifield,*
 592 F. App'x 199 (4th Cir. 2015) ..........................................................................12

*Lee v. Winston,*
 717 F.2d 888 (4th Cir. 1983)..................................................................................17

*Lovelace v. Lee,*
  472 F.3d 174 (4th Cir. 2006)..................................................................30

*Milligan v. City of Newport News,*
  743 F.2d 227 (4th Cir. 1984)..................................................................15

*Monell v. New York City Department of Social Services,*
  436 U.S. 658 (1978) ...............................................................................15

*Moore v. Bennette,*
  517 F.3d 717 (4th Cir. 2008)..................................................................11

*Owens v. Balt. City State's Attys.' Office,*
  767 F.3d 379 (4th Cir. 2014)..................................................................15

*Porter v. Clarke,*
  290 F. Supp. 3d 518 (E.D. Va. 2018) ....................................................29

*Porter v. Clarke,*
  852 F.3d 358 (4th Cir. 2017).....................................................................8

*Porter v. Clarke,*
  923 F.3d 348 (4th Cir. 2019)....................................................... 18, 20, 21, 22

*Preiser v. Rodriguez,*
  411 U.S. 475(1973) .................................................................................16

*Price v. Johnston,*
  334 U.S. 266 (1948) ...............................................................................24

*Pyler v. Moore,*
  100 F.3d 365 (4th Cir. 1996)..................................................................29

*Rendelman v. Rouse,*
  569 F.3d 182 (4th Cir. 2009).....................................................................9

*Reynolds v. Wagner,*
  128 F.3d 166 (3d Cir. 1997)....................................................................33

*Rodriguez v. Ratledge,*
  715 F. App'x 26 (4th Cir. 2017) .............................................................16

*Ross v. Blake,*
  136 S. Ct. 1850 (2016) ........................................................................12

*Sandin v. Conner,*
  515 U.S. 472 (1995) ...................................................................... 21, 22

*Scott v. Siddiqui,*
  Case No. 17-cv-1127-JPG-SCW (S.D. Ill. Apr. 5, 2018)....................................33

*Shaw v. Stroud,*
  13 F.3d 791 (4th Cir. 1994)..................................................................19

*Spires v. MetLife Group, Inc.*
  18-CV-4464 (RA), 2019 WL 4464393 (S.D.N.Y. Sept. 18, 2019) ........................8

*Swain v. Junior,*
  961 F.3d 1276 (11th Cir. 2020).......................................................... 22, 30

*Thompson v. Opoku,*
  Civil Action No.: ELH-18-1022 (D. Md. Feb. 28, 2020) ........................... 11, 12

*Toure v. Hott,*
  --- F.Supp.3d ---, Civil Action No. 1:20-cv-395 (E.D. Va. Apr. 29, 2020)... 17, 18

*U.S. ex rel. Vuyyuru v. Jadhav,* 555 F.3d 337 (4th Cir. 2009) ..................................8

*Wilborn v. Mansukhani,*
  795 F. App'x 157 (4th Cir. 2019) ........................................................16

*Williamson v. Stirling,*
  912 F.3d 154 (4th Cir. 2018)............................................................ 23,25,27,28

**Statutes**

18 U.S.C. § 3626(a)(1)(A) ............................................................ 29, 32

28 U.S.C. § 2241 ...........................................................................*Passim*

42 U.S.C. § 1983 ...........................................................................*Passim*

*The Prison Litigation Reform Act ("*<u>PLRA</u>*"),*
  42 U.S.C. § 1997e *et seq.*,...........................................................*Passim*

**Rules**

Fed. R. Civ. P. 12(b)(1) .................................................................. 14, 17, 39

Rule 12(b)(6) ...................................................................................... 19, 35

Pursuant to Rules 12(b)(1) and 12(b)(6) of the <u>Federal Rules of Civil Procedure</u>, Defendant MARY LOU MCDONOUGH ("<u>Director McDonough</u>"), in her official capacity as Director of the Prince George's County Department of Corrections ("<u>PGCDOC</u>"), hereby submits this Memorandum of Law in Support of her Motion to Dismiss or, Alternatively, Motion for Summary Judgment regarding the Amended Complaint (Doc. No. 120) filed by Plaintiffs KEITH SETH, DAVID SMITH, MARIO BURCH, and JOHN DOES 1–5[1] (collectively, the "<u>Plaintiffs</u>").

## INTRODUCTION

Like the emperor with his "new clothes," Plaintiffs refuse to acknowledge the obvious, insurmountable obstacle to their claims: Director McDonough acted swiftly and systemically to protect the individuals housed within Prince George's County detention facility (the "<u>Facility</u>") from COVID-19 and ensure they received constitutionally appropriate care. In a continuing attempt to manufacture a basis for this litigation, Plaintiffs' amended pleading continues to ignore the current circumstances within the Facility. Rather than amend their allegations in light of the thousands of pages of operational documents provided to them, the report by the

---

[1] The Amended Complaint identifies five (5) Plaintiffs as "John Does 1–5." Plaintiffs failed to seek leave of Court for these individuals to proceed by pseudonym or show why the individuals' identities cannot be disclosed. Director McDonough objects to these individuals proceeding as named plaintiffs (particularly, in light of their claimed status as representatives of a putative class) under pseudonyms and contends that they must disclose their identities if they wish to proceed as parties in this action. Nevertheless, in an abundance of caution pending the Court's resolution of this issue, Director McDonough will refer to John Does 1–5 by their pseudonyms in this brief.

Court's independent inspector, and the Court's findings during the June 22, 2020, hearing, Plaintiffs incredibly copy and paste the same allegations set forth in their initial pleading—allegations which Plaintiffs and their counsel know to be false. (See Doc. No. 120 at 1, n. 2).  For example, the Amended Complaint alleges that Plaintiffs remain within the Facility, but, ***more than a month ago, Plaintiffs admitted that five (5) Plaintiffs were no longer in the custody of Prince George's County Department of Corrections*** ("PGCDOC").  (Cf. id. at ¶¶ 14-21 with Ex. A hereto (Plts.' Supp. Interrog. Resp.) at 3-4).  Even if Plaintiffs' Amended Complaint did not include blatant falsehoods (*readily known to Plaintiffs and their counsel*), Plaintiffs cannot utilize the United States Constitution in an effort to gain control over the Facility's operations and undermine Director McDonough's authority and discretion to continue to operate in the Facility in a manner that ensures the safety and security of staff and incarcerated individuals.

As discussed in greater detail below, Plaintiffs' claims against Director McDonough fail for the following reasons:

(1)   The Released Plaintiffs' claims are moot;

(2)   Plaintiffs failed to exhaust the administrative grievance procedures available at the Facility;

(3)   Plaintiffs' over-detention claim fails to state a claim for relief;

(4)   Plaintiffs' habeas petition fails to state a claim for relief;

(5)     Count IV fails to state a claim pursuant to 42 U.S.C.
        § 1983 based on the Facility's lockdown measures;

(6)     The Amended Complaint fails to state a due process
        claim; and

(7)     The Amended Complaint fails to state a claim for
        injunctive relief.

For these reasons, Plaintiffs' Amended Complaint is due to be dismissed.

### PLAINTIFFS' AMENDED COMPLAINT

In Plaintiffs' Amended Complaint, they seek injunctive and declaratory relief
as well as a habeas petition pursuant to 28 U.S.C. § 2241 against Director
McDonough based on Plaintiffs' status as current and former detainees at the
Facility.  (Doc. No. 120 at ¶¶ 14-21, 251-78).  Plaintiffs, who include both pre-trial
and post-conviction detainees, take issue with the measures implemented by
Director McDonough and the other members of PGCDOC's leadership in
responding to protect the detainees[2] housed at the Facility from COVID-19.  (Id.).

The Amended Complaint alleges that COVID-19 constitutes a highly
contagious infectious disease.  (Id. at ¶¶ 27, 65).  Preventing the spread of the virus
within a detention facility represents a challenging task due, in part, to the difficulties
in maintaining social distancing.  (Id. at ¶¶ 59-67).  Moreover, COVID-19 can spread

---

[2] For the sake of simplicity, this brief will refer to the individuals in PGCDOC's custody as
"detainees," regardless of whether the individuals are awaiting trial or have been convicted.

from a detention facility into the surrounding community.  (Id. at ¶ 61).  In early April, a detainee awaiting release under a satisfied bond remained in custody due to pending COVID-19 test results.  (Id. at ¶¶ 183-86).  Plaintiffs do not allege that Director McDonough knew of this individual's detention or that his extended detention resulted from any policy or custom instituted by her.  (See id. generally).

Due to the potential for spreading COVID-19 within detention facilities, the United States Centers for Disease Control ("CDC") and other public health officials recommended detention facilities restrict movement within their facilities, e.g., implement lockdowns, to prevent the spread of COVID-19.  (Id. at ¶¶ 138-40, n. 81). "Lockdown[s] … [strengthen] public health [by] … enabl[ing] social distancing during a pandemic…."  (Id. at ¶ 140, n. 81).

Consistent with the CDC guidance, PGCDOC implemented lockdown measures at the Facility in early April 2020.  (Id. at ¶¶ 132; Doc. No. 2-1 at 267 (CDC's recommendations)).  The lockdown measures, while restrictive, nonetheless provided detainees with extensive social interaction, including the assignment of cellmates.  (Id. at ¶ 143).  Members of PGCDOC's staff checked on the detainees in their cells at least twice a day.  (Id. at ¶ 210).  Detainees also interacted on a regular basis with members of the medical and mental health staffs in response to requests for attention.  (Id. at ¶¶ 157, 202).  Detainees received the opportunity for daily phone calls to family members, friends, and counsel.  (Id. at ¶ 196).  Furthermore,

the detainees receive up to two (2) hours of out-of-cell time each day in groups of ten (10) detainees.  (<u>Id.</u> at ¶¶ 191, 200).

PGCDOC also ensured detainees receive opportunities to stay physically and mentally fit.  Detainees took daily showers.  (<u>Id.</u> at ¶ 134).  Detainees engaged in recreational activities, including outdoor recreation.  (<u>Id.</u> at ¶¶ 134, 196, 200). PGCDOC also provided the detainees with reading materials, including books and newspapers.  (<u>Id.</u> at ¶¶ 205-06).

The lockdown and other measures implemented by Director McDonough successfully contained the spread of COVID-19 at the Facility.  (Doc. No. 84 at 13). Nevertheless, Director McDonough and the other members of PGCDOC's leadership have continually evaluated operational policies to pursue the effective means to limit transmission of COVID-19.  (Doc. No. 120 at ¶¶ 136, 191, 237).

<strong><u>UNDISPUTED RELEVANT FACTS</u></strong>

Facts which Plaintiffs cannot fairly dispute compel the dismissal of their claims at this stage of the proceedings.  Importantly, five (5) of the eight (8) Plaintiffs are no longer in PGCDOC's custody.  (Declaration of Major Luke Dixon ("<u>Dixon Decl.</u>"), attached hereto as Exhibit B, at ¶ 4; Ex. A (Plts.' Supp. Interrog. Resp.) at 3-4).[3]  PGCDOC released Plaintiffs Keith Seth, Mario Burch, John Doe No. 2, John

---

[3] Director McDonough is filing Exhibits A and B hereto under seal because they contain the names of John Does 1–5.

Doe No. 3, and John Doe No. 5 (collectively, the "Released Plaintiffs") *prior* to Plaintiffs filing the Amended Complaint. (See id.). Indeed, Plaintiffs' counsel knew of the Released Plaintiffs' release from PGCDOC's custody ***more than two (2) weeks prior*** to filing the Amended Complaint, which nonetheless alleges those Plaintiffs remain at the Facility. (Cf. Ex. A (Plts.' Supp. Interrog. Resp.) at 3-4 with Doc. No. 120 at ¶¶ 14-21).

Furthermore, Plaintiffs failed to exhaust the administrative grievance procedures available to them at the Facility with respect to their claims in this action. (Dixon Decl. at ¶ 12). PGCDOC maintains a grievance procedure that allows detainees at the Facility to voice a complaint regarding any matter related to their confinement. (Id. at ¶¶ 5-11; PGC-152–53). During the initial entry phase at the Facility, every detainee receives a copy of the Inmate Handbook, which outlines the grievance process. (Id. at ¶ 6). In addition, PGCDOC posts the relevant excerpts from the Inmate Handbook, which contain written descriptions of the grievance process, in every housing unit at the Facility. (Id.). Detainees submit grievances to the members of PGCDOC's staff on a regular basis, and the detainees are well aware of how to utilize the grievance process. (Id. at ¶ 7).

The members of PGCDOC's staff seek to resolve detainees' concerns through an informal grievance process by speaking with the detainee. (Id. at ¶ 8). If the informal grievance process does not resolve a detainee's concerns, the detainee must

complete an Inmate Grievance Form and submit the form to the zone commander over the detainee's housing unit.  (Id. at ¶ 9; PGC-152–53, PGC-3730).  The zone commander submits a completed grievance form up the chain of command to the chief over the relevant division at the Facility.  (Id. at ¶ 10; PGC-152–53).  The division chief renders a decision on a detainee's written grievance, and the detainee receives a copy of his or her Inmate Grievance Form with the written decision included.  (Id.).  The inmate may appeal the grievance decision to Director McDonough within five (5) days if the detainee is not satisfied with the grievance decision.  (Id. at ¶ 11; PGC-152–53).  Director McDonough's decision on the grievance appeal represents the final stage of the grievance process at the Facility, although a detainee may seek further recourse in state court.  (Id.).

Since January 1, 2020, despite being aware of the grievance process, no Plaintiff initiated any aspect of the grievance process.  (Id. at ¶¶ 7, 12).

### STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted) (internal quotations omitted)).  "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S.

544, 555 (2007) (citations omitted) (internal quotation marks omitted)).  "'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'"  Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 557)).

In considering a Rule 12(b)(1) motion to dismiss, a court may consider materials outside the pleadings, such as affidavits.  U.S. ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347-48 (4th Cir. 2009).  A plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence.  Id.

## ARGUMENT

## I.   THE RELEASED PLAINTIFFS' CLAIMS ARE MOOT.

All of the claims by Plaintiffs Seth, Burch, John Doe No. 2, John Doe No. 3, and John Doe No. 5 are due to be dismissed as moot.  A federal court's jurisdiction "extends only to actual cases or controversies."  Porter v. Clarke, 852 F.3d 358, 363 (4th Cir. 2017) (citing U.S. Const., Art. III, § 2).  "When a case or controversy ceases to exist—either due to a change in the facts or the law—the litigation is moot, and the court's subject matter jurisdiction ceases to exist also."  Id.  (internal quotation omitted).  "A case becomes moot … when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  Catawba

Riverkeeper Found. v. N.C. Dep't of Transp., 843 F.3d 583, 588 (4th Cir. 2016).
The doctrine of mootness precludes the Released Plaintiffs' claims.

"[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." Rendelman v. Rouse, 569 F.3d 182, 186 (4th Cir. 2009).  The Fourth Circuit repeatedly held that a plaintiff's release from custody moots any claims for prospective relief and deprives the court of subject-matter jurisdiction over such claims.[4]  "Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, … he no longer has a legally cognizable interest in a judicial decision on the merits of his claim."  Incumaa v. Ozmint, 507 F.3d 281, 287 (4th Cir. 2007).

The mootness doctrine applies with equal force to habeas petitions.[5]  A habeas petition seeking a detainee's release from custody necessarily becomes moot upon

---

[4] See Rendelman, 569 F.3d at 186 (affirming dismissal of injunctive relief claim as moot in light of inmate's release from custody); Inmates v. Owens, 561 F.2d 560, 562-63 (4th Cir. 1977) (inmates' release from county jail mooted their claims for injunctive, declaratory, and habeas relief); Incumaa v. Ozmint, 507 F.3d 281, 286-87 (4th Cir. 2007) (inmate's transfer mooted his claims for injunctive and declaratory relief because he was no longer subject to the challenged policy, practice, or condition); Moneyhan v. Keller, 563 F. App'x 256, 258 (4th Cir. 2014) (inmate's release mooted his injunctive relief claim); Williams v. Griffin, 952 F.2d 820, 823 (4th Cir.1991) (an inmate's transfer mooted his claims for injunctive and declaratory relief).

[5] See Owens, 561 F.2d at 562 ("A dismissal due to mootness likewise results even if the suit … is treated as one seeking habeas corpus relief instead of relief under the civil rights and declaratory judgment statutes since the prisoners are no longer subjected to the alleged conditions of which they complained."); Reyes v. U.S. I.N.S., 141 F. App'x 96, 97 (4th Cir. 2005) (alien detainee's release on parole mooted his appeal of the denial of habeas corpus); Quarterman v. Young, Case No. 5:18-cv-01461, 2020 WL 3442841 at *5-6 (S.D. W.Va. Mar. 11, 2020) (plaintiff's release

the detainee's release from custody because the detainee achieved what he or she sought—release from custody.[6]  As such, the black letter law in the Fourth Circuit compels the dismissal of Released Plaintiffs' claims.

The current status of Released Plaintiffs moots their claims.  (See Ex. A (Plts.' Supp. Interrog. Resp.) at 3-4; Dixon Decl. at ¶ 4).  Released Plaintiffs seek only injunctive, declaratory, and habeas relief, i.e. prospective relief, related to the policies, procedures, and conditions at the Facility.  (Doc. No. 120 at ¶¶ 251-278).  Their release from PGCDOC's custody thus deprives this Court of subject-matter jurisdiction over their claims because they no longer possess "a legally cognizable interest in a judicial decision on the merits of [their] claim[s]."  Ozmint, 507 F.3d at 287.  Plaintiffs' release from custody also moots their habeas petition because they received the relief they sought—release from custody.  Therefore, pursuant to Rule 12(b)(1), the Released Plaintiffs' claims are due to be dismissed.

## II.   PLAINTIFFS FAILED TO EXHAUST THE ADMINISTRATIVE GRIEVANCE PROCEDURES AVAILABLE AT THE FACILITY.

---

from custody rendered moot his habeas petition), *report and recommendation adopted*, Case No. 5:18-cv-01461, 2020 WL 3441969 (S.D. W.Va. June 23, 2020).

[6] See Williams v. Holland, 735 F. App'x 120, 121 (4th Cir. 2018) (dismissing appeal of the denial of a habeas petition as moot in light of the appellant's release from custody); Quarterman, 2020 WL 3442841 at *5-6; Sneed v. Joyner, No. 5:18-cv-02448-DCC-KDW, 2019 WL 2090849, at *2 (D.S.C. Mar. 19, 2019), *report and recommendation adopted*, No. 5:18-cv-02448-DCC, 2019 WL 2089544 (D.S.C. May 13, 2019) (habeas petition was moot in light of petitioner's release).

Plaintiffs' failure to exhaust the administrative grievance procedures available at the Facility requires the dismissal of their claims.[7]  The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e *et seq*., requires a detainee to ***exhaust all available administrative remedies prior to filing a suit*** in federal court challenging jail conditions.  Jones v. Bock, 549 U.S. 199, 211 (2007); Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).  The PLRA's exhaustion requirements apply to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Thompson v. Opoku, Civil Action No.: ELH-18-1022, 2020 WL 978681, at *13 (D. Md. Feb. 28, 2020) (quoting Porter v. Nussle, 534 U.S. 516, 532 (2002)).  The PLRA's exhaustion requirements unquestionably apply to Plaintiffs' claims.

No "special circumstances" exception exists to excuse a detainee from the obligation to exhaust all administrative remedies before filing suit.  See Ross v. Blake, 136 S. Ct. 1850, 1858 (2016) (striking down the "special circumstances"

---

[7] Courts routinely hold that the defense of failure to exhaust administrative remedies is properly raised in a motion to dismiss.  See, e.g., Bryant v. Rich, 530 F.3d 1368, 1374-75 (11th Cir. 2008) *cert. denied* 555 U.S. 1074 (2008) ("Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense … is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss….") (internal quotations and citations omitted).  However, if the Court determines that Director McDonough's defense of failure to exhaust administrative remedies is more properly considered as a motion for summary judgment, Director McDonough requests the Court to alternatively grant her summary judgment dismissing Plaintiffs' claims for their failure to exhaust administrative remedies under the PLRA.  See Mitchell v. Stump, Civil Action No. PX-17-2056, 2018 WL 4468855, at *5 (D. Md. Sept. 18, 2018) (granting summary judgment and dismissing plaintiff's complaint for failure to exhaust administrative remedies before filing suit); Ward v. Warden, Civil No. PX-17-3084, 2018 WL 2129735, at *5 (D. Md. May 9, 2018) (same).

exception to the PLRA's exhaustion requirement).   A detainee must exhaust the available administrative remedies "regardless of the relief offered through administrative procedures."   Booth v. Churner, 532 U.S. 731, 741 (2001). Accordingly, an inmate must comply with all steps, processes, and procedural rules that the agency holds out as an administrative remedy.  Kilpatrick v. Hollifield, 592 F. App'x 199, 200 (4th Cir. 2015); Greene v. Lau, Civil Action No. RDB-19-1217, 2019 WL 4643945, at *3 (D. Md. Sept. 24, 2019).  "If [a] plaintiff's claim has not been properly presented through the administrative remedy procedure it ***must*** be dismissed.…"  Thompson, 2020 WL 978681, at *13   (alteration in original) (emphasis added).

Plaintiffs failed to exhaust the administrative remedies available to them at the Facility prior to initiating this action.  PGCDOC maintains a grievance procedure whereby detainees at the Facility can receive an administrative review of their complaints.  (Dixon Decl. at ¶¶ 5-11; PGC-152–53); Greene, 2019 WL 4643945, at *1.  Detainees know of and routinely utilize the grievance procedure.  (Dixon Decl. at ¶ 7).  However, since January 1, 2020, ***Plaintiffs never filed any grievances whatsoever related to any of their claims in this matter***.  (Id. at ¶ 12).  This Court routinely dismisses inmate complaints under such circumstances.[8]  Therefore, the

---

[8] See, e.g., Greene, 2019 WL 4643945, at *1-4 (dismissing complaint by detainee who failed to utilize PGCDOC's grievance process); Mitchell, 2018 WL 4468855, at *5 (granting summary judgment and dismissing plaintiff's complaint for failure to exhaust administrative remedies before filing suit); Ward, 2018 WL 2129735, at *5 (same); Wooten v. U.S. BOP, Civil Action No. GLR-

Amended Complaint is due to be dismissed due to Plaintiffs' failure to exhaust the administrative remedies available to them through the grievance process.

### III. PLAINTIFFS' OVER-DETENTION CLAIM FAILS TO STATE A CLAIM FOR RELIEF.

Plaintiffs' over-detention claim pursuant to 42 U.S.C. § 1983 is due to be dismissed pursuant to Rule 12(b)(6) for failing to state a claim.  Plaintiffs allege that "the Jail" "resorted to unlawful means to control the virus's spread outside of" the Facility by "refus[ing] to release COVID-positive prisoners who have paid bail (or are otherwise legally entitled to release) until [the Jail] deems them non-contagious." (Doc. No. 120 at ¶ 183).  Plaintiffs *do not* allege that Director McDonough instituted a formal policy of over-detention or knew of any incidents of over-detention.  (See generally id.).  Conspicuously, Plaintiffs only allege that *a single detainee, who was not a Plaintiff, was over detained* as a precaution against spreading COVID-19 into the community.  (Id. at ¶¶ 183-86).  Stated differently, the Amended Complaint *does not allege that any Plaintiff was subjected to over-detention*.  (See generally id.).

The Amended Complaint fails to state an over-detention claim for a variety of reasons.  First, at the most basic level, Plaintiffs do not allege that *they* suffered any constitutional deprivation from over-detention.  To adequately allege a § 1983 claim,

---

16-3565, 2018 WL 1083733, at *5 (D. Md. Feb. 28, 2018) (same); Burris v. Hoffman, CIVIL ACTION NO. DKC-15-3773, 2015 WL 9268574, at *2 (D. Md. Dec. 21, 2015) (dismissing inmate's complaint because the inmate failed to exhaust administrative remedies).

"one must allege that *he, himself*, sustained a [constitutional] deprivation…." Inmates v. Owens, 561 F.2d 560, 562-63 (4th Cir. 1977) (emphasis added).  As such, Plaintiffs cannot bring any § 1983 claim because they did not suffer any injury.

Second, and for this same reason, Plaintiffs lack standing to obtain declaratory or injunctive relief.  "To satisfy the irreducible constitutional minimum of standing, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  Deal v. Mercer Cnty. Bd. of Educ., 911 F.3d 183, 187 (4th Cir. 2018) (internal quotation, citation, and punctuation omitted).  Plaintiffs cannot satisfy any, much less all, of these elements for standing.

Third, even if Plaintiffs adequately alleged they suffered a constitutional violation due to over-detention (they do not), the Amended Complaint fails to allege liability for Director McDonough.  Because Plaintiffs sued Director McDonough in her official capacity as PGCDOC's director, they sued, in effect, Prince George's County, Maryland.  See Kentucky v. Graham, 473 U.S. 159, 165 (1985).  Pursuant to Monell v. New York City Department of Social Services, 436 U.S. 658 (1978), "a municipality is liable only for its *own* illegal acts."  Owens v. Balt. City State's Attys.' Office, 767 F.3d 379, 402 (4th Cir. 2014) (emphasis in original).  A municipality will become liable *only* if its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official

policy, inflicts the injury." <u>Hunter v. Town of Mocksville, N.C.</u>, 897 F.3d 538, 554 (4th Cir. 2018).  Although "continued inaction in the face of a known history of widespread constitutional deprivations" may support an inference of a municipal policy or custom, "isolated constitutional deprivations by municipal employees" do not establish § 1983 liability for a municipality.  <u>Milligan v. City of Newport News</u>, 743 F.2d 227, 229-30 (4th Cir. 1984).

Here, Plaintiffs do not allege that Director McDonough instituted any policy of over-detention.  Plaintiffs only allege a single instance of over-detention at the Facility.  (Doc. No. 120 at ¶¶ 183-86).  However, a single instance of over-detention cannot, by definition, equate to the "widespread and permanent" practice necessary to demonstrate a custom attributable to Director McDonough.  <u>Greensboro Prof. Fire Fighters Ass'n, Local 3157 v. City of Greensboro</u>, 64 F.3d 962, 967 (4th Cir. 1995) (affirming summary judgment in light of only two (2) prior similar incidents).  Thus, the Amended Complaint fails to state a § 1983 claim for over-detention.

## IV.   PLAINTIFFS' HABEAS PETITION FAILS TO STATE A CLAIM.

Plaintiffs' habeas petition pursuant to 28 U.S.C. § 2241 fails to state a claim upon which relief could be granted and is due to be dismissed.  "[H]abeas corpus is an attack by a person in custody upon the legality of that custody, and [ ] the traditional function of the writ is to secure release from illegal custody."  <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 484 (1973).  Thus, traditionally, habeas petitions challenge

"the very fact or duration of [a petitioner's] physical imprisonment, and the relief that [the petitioner] seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment."  Id. at 500.  Such petitions constitute "the essence" or "the heart of habeas corpus."  Id. at 484, 498.

A conditions-of-confinement claim does not constitute a cognizable habeas petition pursuant to § 2241.  The Fourth Circuit repeatedly held, albeit in unpublished decisions, that "conditions-of-confinement claims are not cognizable in habeas proceedings."  See, e.g., Wilborn v. Mansukhani, 795 F. App'x 157, 162, 163 (4th Cir. 2019) (per curiam) (noting that the "Supreme Court has not definitively addressed" the question); Rodriguez v. Ratledge, 715 F. App'x 261, 265-66 (4th Cir. 2017) (per curiam); Braddy v. Wilson, 580 F. App'x 172, 173 (4th Cir. 2014) (per curiam).  "[C]ourts have generally held that a § 1983 suit or a *Bivens* action is the appropriate means of challenging conditions of confinement, whereas § 2241 petitions are not."  Rodriguez, 715 F. App'x at 266; see also Lee v. Winston, 717 F.2d 888, 892 (4th Cir. 1983) (noting "the main thrusts of [a habeas petition and § 1983 suit] are obviously quite different").  The Fourth Circuit's consistent holdings on this issue compel the dismissal of Plaintiffs' habeas petition pursuant to § 2241.

Where, as here, a plaintiff alleges a correctional or detention facility responded inadequately to the COVID-19 pandemic, a habeas proceeding does not constitute the proper proceeding for such a claim.  See, e.g., Hallinan v. Scarantino,

--- F.Supp.3d ---, No. 5:20-HC-2088-FL, 2020 WL 3105094, at *1, 10-13 (W.D.N.C. June 11, 2020); Toure v. Hott, --- F.Supp.3d ---, Civil Action No. 1:20-cv-395, 2020 WL 2092639, at *1, 5-8 (E.D. Va. Apr. 29, 2020); Alvarez v. Larose, --- F.Supp.3d ---, Case No.: 20-cv-00782-DMS (AHG), 2020 WL 2315807, at *1-4 (S.D. Cal. May 12, 2020). Such allegations "clearly present[ ] a challenge to the *conditions* of Plaintiffs' confinement." Alvarez, 2020 WL 2315807, at *4 (emphasis added). For example, in Alvarez, a group of detainees brought a habeas petition seeking the release of "medically vulnerable" detainees due the "Defendants' alleged inaction in controlling the COVID-19 outbreak at" their facility through increased social distancing, sanitation, and compliance with the CDC guidelines. Id. at *2, 4. The Court found that the claims in Alvarez could not be brought in a habeas proceeding because those "claims would not exist *but for* the[ detainees'] current conditions of confinement." Id. at *3.

In the memorandum opinion on Plaintiffs' motion for a temporary restraining order, the Court found that "Plaintiffs' habeas claim, at its core, is a challenge to prison conditions." (Doc. No. 84 at 18). Plaintiffs' pleading alleged "the very conditions that, if remedied, would mitigate the risk to all detainees, including the [medically vulnerable] subclass." (Id.). Thus, the Court concluded that it "cannot plausibly read this Complaint as bringing" a challenge to the *fact* of Plaintiffs' confinement at the Facility. (Id.). The Amended Complaint did not remedy this

17

issue.  In light of the "entrenched" view of the Fourth Circuit that a conditions-of-confinement claim is not proper for a habeas proceeding, <u>Toure</u>, 2020 WL 2092639, at *8, Plaintiffs' habeas petition is due to be dismissed.

## V.  COUNT IV FAILS TO STATE A § 1983 CLAIM BASED ON THE LOCKDOWN MEASURES.

Count IV of the Amended Complaint fails to state a claim for relief pursuant to 42 U.S.C. § 1983 based on the alleged psychological and physiological effects of PGCDOC's lockdown measures.  Plaintiffs' own allegations regarding the risk posed by COVID-19 prove fatal to this claim.

Count IV fails for at least three (3) reasons.  First, the Amended Complaint fails to identify any Plaintiff who experienced any harmful effects from the lockdown or that any Plaintiff faced "a substantial risk of serious harm" from the lockdown.  <u>Porter v. Clarke</u>, 923 F.3d 348, 360 (4th Cir. 2019) (internal quotation omitted).  The Amended Complaint alleges a wide variation in circumstances for the detainees subject to the Facility's lockdown.  (<u>See</u> Doc. No. 120 at ¶¶ 187-215).  For example, the variation in the detainees' circumstances extends to the amount of out-of-cell time, the amount of recreational time, the provision of mental health services, the extent of interaction with staff members and other detainees, use of the outdoor recreation area, the extent of communication with attorneys and family members, and access to reading materials.  (<u>Id.</u>).  However, the Amended Complaint remains

silent with respect to *Plaintiffs'* circumstances at the Facility and, therefore, fails to articulate any purported risk of harm to justify Plaintiffs' claims.

By failing to include any allegations regarding Plaintiffs' circumstances, the Amended Complaint does not allege any constitutional deprivation to Plaintiffs with respect to the lockdown or draw the necessary causal link to a policy or custom instituted by the County.  To adequately allege a § 1983 claim, "one must allege that *he, himself*, sustained a [constitutional] deprivation…." Owens, 561 F.2d at 562-63 (emphasis added).  Plaintiffs must allege "an affirmative causal link" between a policy or custom instituted by Director McDonough and a "particular constitutional injury suffered by plaintiff[s]." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (addressing the appeal of a summary judgment ruling); Hill v. Robeson Cnty., N.C., 733 F. Supp. 2d 676, 688-89 (E.D.N.C. 2010) (dismissing a § 1983 claim against a county).  Plaintiffs may not rely on the Court's *speculation* that they suffered a constitutional deprivation related to the Facility's lockdown.  See Twombly, 550 U.S. at 555.  Because the Amended Complaint does not allege a "particular constitutional injury" to Plaintiffs due to the lockdown, it fails to state a claim for relief against Director McDonough.

Second, as alleged in the Amended Complaint, the circumstances at the Facility do not equate to "solitary confinement," regardless of Plaintiffs' use of that label, or implicate the possible risk of harm related to "solitary confinement."  See

Twombly, 550 U.S. at 555 (holding that the pleading standard "requires more than labels and conclusions").  Plaintiffs rely heavily on Porter v. Clarke, 923 F.3d 348 (4th Cir. 2019) , with respect to Count IV, but the facts in Porter are easily distinguishable from the Amended Complaint's factual allegations.  In Porter, the Fourth Circuit concluded that Virginia's death row inmates experienced solitary confinement because, among other reasons, they were housed "for years, between 23 and 24 hours a day alone," in small, "non-adjacent cells with solid steel doors" without the opportunity for interaction with other inmates.  Id. at 353-54, 357, 360 (internal quotation and citation omitted).  In contrast to the facts in Porter, the Amended Complaint alleges that the detainees at the Facility receive up to two (2) hours of out-of-cell time each day in groups of ten (10) detainees in addition to the interactions with their cellmates.  (Doc. No. 120 at ¶¶ 143, 191, 200).  Furthermore, in stark contrast to the "years" of solitary confinement at issue in Porter, PGCDOC only implemented the lockdown in early April, i.e. approximately three (3) months ago.  (Id. at ¶ 132).  Thus, Plaintiffs' conclusory allegations regarding the risk of harm associated with solitary confinement remain irrelevant and fail to articulate any basis for any actionable claim against Director McDonough.

Third, even if Plaintiffs alleged they face a "substantial risk of serious harm" due to the lockdown (they do not), they fail to allege § 1983 liability for Director McDonough because the lockdown was instituted as a necessary response to the

health risk posed by the COVID-19 pandemic. "[E]ven though … conditions [of confinement] create an objective risk of serious emotional and psychological harm[,] … prison officials tasked with the difficult task of operating a detention center may reasonably determine that prolonged solitary confinement is necessary to protect the well-being of prison employees, inmates, and the public…." Porter, 923 F.3d at 363 (finding that the district court erred in disregarding the defendants' argument "that legitimate penological considerations justified the challenged conditions"). "The difficulties of operating a detention center must not be underestimated by the courts." Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington, 566 U.S. 318, 326 (2012). Courts appropriately defer to the designated officials in the operation of correctional and detention facilities, Sandin v. Conner, 515 U.S. 472, 482 (1995), and the "rationale for judicial deference is greatest when the maintenance of prison order is at stake." In re Long Term Admin. Seg. of Inmates Designated as Five Percenters, 174 F.3d 464, 469 (4th Cir. 1999) (abrogated on other grounds by Porter). Such deference unquestionably applies with respect to the decision to implement a lockdown at the Facility.

The pandemic required extraordinary measures to prevent the spread of COVID-19 at the Facility and protect the health of the detainees and staff members. See Swain v. Junior, 961 F.3d 1276, 1280 (11th Cir. 2020) (noting that the pandemic "poses particularly acute challenges for the administration of the country's jails and

prisons"). As the Court found, the "lockdown measures implemented" at the Facility "worked to contain the spread of COVID-19 when staff and detainees began testing positive." (Doc. No. 84 at 13). Courts routinely recognize that such restrictions on movement to prevent the spread of infectious disease comply with constitutional standards.[9] Plaintiffs' philosophical disagreement with the temporary lockdown at the Facility does not suffice to state a § 1983 claim in light of the deference due to Director McDonough.[10] See Porter, 923 F.3d at 363; Sandin, 515 U.S. at 482. Thus, Count IV is due to dismissed for failure to state a claim.

## VI. THE AMENDED COMPLAINT FAILS TO STATE A DUE PROCESS CLAIM.

Plaintiffs' due process claim related to the lockdown measures also fails to a state a claim for relief and is due to be dismissed. Although unclear in certain respects, the Amended Complaint appears to allege a claim for both procedural and substantive due process violations. (Doc. No. 120 at ¶¶ 234-40, 272-78). The

---

[9] See Sample v. Angelone, 173 F.3d 425 (Table), 1999 WL 52347 (4th Cir. 1999) (affirming the dismissal of an inmate's claim based on his confinement in restrictive housing after refusing to submit to a tuberculosis test); McCormick v. Stalder, 105 F.3d 1059, 1061-62 (5th Cir. 1997) (holding that confined housing for medical observation related to possible tuberculosis was appropriate); Karolis v. N.J. Dep't of Corr., 935 F. Supp. 523, 530 (D.N.J. 1996) (placing inmates who refused tuberculosis testing in isolation "serves the penological interest of preserving the health of inmates and prison employees").

[10] Plaintiffs take an inherently inconsistent position with respect to the lockdown. On the one hand, Plaintiffs allege that Director McDonough violated the Constitution because "[t]he Jail's limited attempts at social distancing measures are markedly careless." (Doc. No. 120 at ¶¶ 93, 99, 251-56). On the other hand, Plaintiffs allege she violated the Constitution by enforcing social distancing by means of the lockdown. (Id. at ¶¶ 266-71). Plaintiffs' inconsistency demonstrates the exact reasons why the Constitution does not permit Plaintiffs' counsel to second guess the vast experience held by correctional authorities such as Director McDonough.

Amended Complaint fails to state a due process claim whether analyzed under the procedural or substantive due process framework.

**a.     Director McDonough did not violate Plaintiffs' substantive due process rights.**

The substantive due process standard differs slightly depending on whether a claim is brought by a pretrial or post-conviction detainee.  See Dilworth v. Adams, 841 F.3d 246, 251-52 (4th Cir. 2016).  "Typically, a substantive due process claim pursued by a pretrial detainee challenges the general conditions of confinement or the treatment of detainees in a specific facility."  Williamson v. Stirling, 912 F.3d 154, 174 (4th Cir. 2018).  The "central inquiry" concerns "whether the conditions imposed on the pretrial detainee constitute 'punishment.'"  Id.  (citing Bell v. Wolfish, 441 U.S. 520, 535-39 (1979)); Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988)).  Pretrial detainees only receive substantive due process protections for a "punishment" imposed on them.  Dilworth, 841 F.3d at 252.  To establish that a restriction or condition constitutes a "punishment," a pretrial detainee must allege that it was either "(1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate non-punitive governmental objective."  Williamson, 912 F.3d at 174 (internal quotation omitted).

With respect to *post-conviction* detainees, "to prevail on either a procedural or substantive due process claim, [they] must first demonstrate that they were deprived of 'life, liberty, or property' by governmental action."  Beverati v. Smith,

120 F.3d 500, 502 (4th Cir. 1997) (citations omitted).  "Lawful incarceration brings

about the necessary withdrawal of many privileges and rights."  Price v. Johnston,

334 U.S. 266, 285 (1948).  To trigger due process protections, post-trial detainees

must allege their "confinement conditions … impose 'atypical and significant

hardship on the inmate in relation to the ordinary incidents of prison life.'"  Incumaa

v. Stirling, 791 F.3d 517, 526 (4th Cir. 2015) (quoting Sandin, 515 U.S. at 484).

The analysis for whether confinement conditions impose an "atypical and

significant hardship" involves a two-step process.  Incumaa, 791 F.3d at 527.  First,

a court must determine the "normative baseline" of the inmate population for

comparative purposes in determining whether a particular inmate's conditions are

"atypical."  Id.  For a detainee in general population, the general population inmates'

conditions provide "the baseline for atypicality."  Id.  Second, a court must decide

"whether the prison conditions [for the inmate] impose atypical and substantial

hardship in relation to that norm."  Id.

The Amended Complaint fails to state a claim for substantive due process

under the standard for either pre-trial or post-conviction detainees.  First, as stated

in Section V supra, the Amended Complaint's generalized allegations regarding the

lockdown do not include any allegations regarding the Plaintiffs.  (See Doc. No. 120

at ¶¶ 187-215, 233-40).  Stated differently, the Amended Complaint forces the Court

to speculate as to whether Plaintiffs experienced conditions of confinement which

were punitive, "not reasonably related to a legitimate non-punitive governmental objective," or an "atypical and significant hardship … in relation to the ordinary incidents of prison life."  See Williamson, 912 F.3d at 174; Incumaa, 791 F.3d at 526.  Plaintiffs erroneously invite the Court to speculate that Plaintiffs suffered a violation of their substantive due process rights and that Director McDonough is liable for such a violation.  See Twombly, 550 U.S. at 555.  The substantive due process claim is due to be dismissed.

Second, even if the Court speculated that the Amended Complaint's allegations regarding the lockdown encompassed Plaintiffs, the allegations do not state a substantive due process violation with respect to the detainees at the Facility. With respect to the pre-trial detainees' substantive due process rights, the lockdown measures were "reasonably related to a legitimate non-punitive governmental objective," i.e. preventing the spread of COVID-19.  (Doc. No. 84 at 13).  With respect to the post-conviction detainees, the lockdown measures do not constitute an "atypical and significant hardship" because *all* of the detainees remained subject to the lockdown measures.  (See Doc. No. 120 at ¶¶ 187-215, 233-40).  Furthermore, Director McDonough and the other members of the Facility's leadership continue to review the necessity for the lockdown restrictions, and the lockdown will remain in place as only as long as necessary during the pandemic.  (See id. at ¶¶ 191 (describing revisions to the lockdown measures), 136 (alleging the lockdown's

duration was tied to the pandemic), 247 (same)).  Indeed, courts consistently find that conditions of confinement much more onerous than the Facility's lockdown comport with substantive due process.[11]  Thus, Plaintiffs' substantive due process claim is due to be dismissed.

### b.     Director McDonough did not violate Plaintiffs' procedural due process rights.

The Amended Complaint also fails to state a claim for procedural due process. "A pretrial detainee challenging individually-imposed restrictions … is entitled to pursue a procedural due process claim." Williamson, 912 F.3d at 174.  The procedural due process protections for a pretrial detainee "vary according to whether a restriction was imposed for disciplinary or administrative purposes." Id. at 175. With respect to restrictions imposed for disciplinary reasons, procedural due process requires the detainee receive "notice of the alleged misconduct, a hearing, and a written explanation of the resulting decision." Id.  However, the procedural due process requirements lessen significantly if the restrictions exist for operational,

---

[11] See Beverati, 120 F.3d at 504 (no due process violation when inmates were placed in administrative restrictive housing for six (6) months with limited out-of-cell time in "cells [that] were infested with vermin; were smeared with human feces and urine; and were flooded with water from a leak in [a] toilet"); Freeland v. Ballard, No. 2:11-cv-443, 2011 WL 7394619, at *2-3 (S.D. W.Va. Aug. 18, 2011) (recommending dismissal of a due process claim despite alleged 16-month assignment to "lockdown"), recommendation adopted by, Civil Action No. 2:11-cv-443, 2012 WL 523707 (S.D. W.Va. Feb. 16, 2012); Gatewood v. Jukenelis, Civil Action No. ELH-16-1644, 2017 WL 149136, at *8 (D. Md. Apr. 26, 2017) ("A temporary assignment to segregated confinement— … [for] even six months, with reduced privileges, few out-of-cell activities or socialization opportunities, and heightened security measures—is not atypical or a significant hardship.").

security, or administrative needs.  Id.  Procedural due process with respect to administrative restrictions must provide the detainee with "an informal, nonadversary review" of the reasons for the restriction, "including submissions from the detainee, within a reasonable time after" imposition of the restriction.  Id. at 182-84 (internal quotation omitted).   To address operational concerns, jail officials may take "immediate" action to impose administrative restrictions prior to initiating the due process procedures.  Id.; Dilworth, 841 F.3d at 255.

With respect to *post-conviction* detainees' procedural due process claims, "to prevail … [they] must first demonstrate that they were deprived of 'life, liberty, or property' by governmental action."  Beverati, 120 F.3d at 502 (citations omitted). Post-conviction detainees must allege their "confinement conditions … impose 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  Incumaa, 791 F.3d at 526 (quoting Sandin, 515 U.S. at 484). Plaintiffs' procedural due process claim falls far short of meeting the due process standard for either pre-trial or post-conviction detainees.

The Amended Complaint fails to state a claim for procedural due process.  As an initial matter, and as stated *supra*, the Amended Complaint does not include any allegations regarding *Plaintiffs'* conditions of confinement related to the Facility's lockdown measures or any failure to provide *Plaintiffs* with procedural due process. In fact, the Amended Complaint does not allege that Director McDonough deprived

*any* pre-trial or post-conviction detainee of procedural due process with respect to the lockdown.  (See Doc. No. 120 at ¶¶ 187-215, 233-40); Williamson, 912 F.3d at 174-75, 182-84 (describing procedural due process protections for pre-trial detainees); Incumaa, 791 F.3d at 527 (describing procedural due process standard).  Thus, Plaintiffs' procedural due process claim fails because they do not allege any constitutional deprivation or any causal link to Director McDonough.

## VII.   THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR INJUNCTIVE RELIEF.

Plaintiffs' request for injunctive relief exceeds the scope of possible remedial relief available to Plaintiffs and is due to be dismissed.  For the reasons stated throughout this brief, Plaintiffs' Amended Complaint is due to be dismissed in its entirety.  However, to the extent that the Court does not dismiss all of Plaintiffs' claims, their request for injunctive relief fails to state a claim pursuant to applicable law and is due to be dismissed pursuant to Rule 12(b)(6).

Constitutional and statutory limitations restrict the scope of remedial relief which courts may impose to correct a constitutional violation with respect to the operation of a detention facility.  See Bell, 441 U.S. at 547-48; Pyler v. Moore, 100 F.3d 365, 369 (4th Cir. 1996).  Congress enacted the PLRA to provide "reasonable limits on the remedies available in lawsuits concerning prison conditions."  Pyler, 100 F.3d at 369 (internal quotation omitted).  The PLRA "remove[d] the federal

district courts from the business of supervising the day-to-day operation of state prisons." Cagle v. Hutto, 177 F.3d 253, 257 (4th Cir. 1999).

Any prospective injunctive relief with respect to the operation of a detention facility must comply with the PLRA's need-narrowness-intrusiveness requirements. See 18 U.S.C. § 3626(a)(1)(A); Porter v. Clarke, 290 F. Supp. 3d 518, 536-37 (E.D. Va. 2018).  Before providing any prospective injunctive relief, a court must find "that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation…." 18 U.S.C. § 3626(a)(1)(A) ; Pyler, 100 F.3d at 369.  Furthermore, a "court **shall give substantial weight** to any adverse impact on public safety or the operation of a criminal justice system caused by the relief."   18 U.S.C. § 3626(a)(1)(A) (emphasis added).

The PLRA codified the long-standing doctrine of judicial deference to jail and correctional administrators in the operation of their facilities.  "[T]he problems that arise in the day-to-day operation of a [detention] facility are not susceptible of easy solutions." Bell, 441 U.S. at 547.  "The Supreme Court has long cautioned that 'courts are ill equipped to deal with the increasingly urgent problems of prison administration.'" Lovelace v. Lee, 472 F.3d 174, 199 (4th Cir. 2006) (quoting Procunier v. Martinez, 416 U.S. 396, 405 (1974)).  The challenges of operating a detention facility fall "peculiarly within the province and professional expertise of

corrections officials, and … courts should ordinarily defer to their expert judgment in such matters." Bell, 441 U.S. at 548.  Thus, a correctional official must "be accorded wide-ranging deference in the adoption and execution of policies that in [her] judgment are needed to preserve internal order and discipline…." Id.

The COVID-19 pandemic "poses particularly acute challenges for the administration of the country's jails and prisons," including administration of the Facility. Swain, 961 F.3d at 1280.  "[P]rison officials are faced with the unenviable (and often thankless) task of maintaining institutional order and security while simultaneously taking proper care of the individuals in their custody." Id.  But, rather than acknowledging Director McDonough's unique expertise in operating the Facility in response to the pandemic, Plaintiffs' request for injunctive relief reflects their eagerness to wrest control over the day-to-day operations of the Facility from her and the Facility's staff.  Stated differently, Plaintiffs invite the Court to assume micro-management of the Facility's operations.

Plaintiffs' request for injunctive relief grossly transgresses the PLRA's need-narrowness-intrusiveness requirements, even assuming Plaintiffs' claims are not dismissed (they should be).  The following requests for injunctive relief, among others, violate the PLRA:

- "Waive all fees for sick call for the duration of th[e] pandemic";

- "Provide adequate medical care to prisoners [for] … any … medical issue";

- "Provide appropriate mental health services to all prisoners";

- "[T]ransfer prisoners to home detention or another appropriate facility"; and

- "Order immediate release … for members of the Medically Vulnerable Subclass."

(Doc. No. 120 at 56-57).

As an initial matter, Plaintiffs' request for release from custody or transfer to a different facility violates the PLRA on its face.  This Court previously found that the PLRA applies to Plaintiffs' request for release or transfer.  (See Doc. No. 84 at 17-18, 30-31).  The Amended Complaint fails to state a request for such relief pursuant to the PLRA, which, among other things, requires the institution of a three-judge court prior to any inmate release order.  See 18 U.S.C. § 3626(a)(3).  The release or transfer of Plaintiffs would also violate the PLRA's need-narrowness-intrusiveness requirements and cause an "adverse impact on public safety [and] the operation of a criminal justice system."  18 U.S.C. § 3626(a)(1)(A) .  Consistent with the PLRA's clear terms, courts consistently reject requests for the release or transfer

of inmates in COVID-19 cases.[12]   Thus, Plaintiffs are not entitled to release from custody or transfer, even if they succeeded on their claims (they will not).

Plaintiffs' other requests for injunctive relief also violate the PLRA.   For example, Plaintiffs' vague, sweeping demand for an injunction touching ***all aspects of medical and mental health care*** at the Facility ignores the limits set by the PLRA. Such an injunction would not constitute "narrowly drawn," "least intrusive means," "extend[ing] no further than necessary," to address Plaintiffs' concerns related to the pandemic.[13]   See 18 U.S.C. § 3626(a)(1)(A) ; see also Scott v. Siddiqui, Case No. 17-cv-1127-JPG-SCW, 2018 WL 4403310, at *3 (S.D. Ill. Apr. 5, 2018) (the inmate's "vague and broad" request for an injunction enjoining the defendants to provide "necessary medical care" violated PLRA because it was not narrowly drawn), *report and recommendation adopted*, Case No. 3:17-cv-1127-JPG-SCW, 2018 WL 2931967 (S.D. Ill. June 12, 2018) ; Hines v. Anderson, 547 F.3d 915, 921-

---

[12] See Alvarez, 2020 WL 2315807, at *4 (concluding that transfer of inmates due to the COVID-19 pandemic did not comply with the PLRA); Money v. Pritzer, Case No. 20-cv-2093, 2020 WL 1820660, at *12-14 (N.D. Ill. Apr. 10, 2020) (concluding the request to release prisoners due to COVID-19 violated the PLRA's requirement to narrowly draw relief); Coleman v. Newsom, Case No. 2:90-cv-0520 KJM DB P (E.D. Cal.) & Plata v. Newsom, Case No. 4:01-cv-01351-JST (N.D. Cal.), --- F. Supp. 3d ---, 2020 WL 1675775, at *4 (Three-Judge Court Apr. 4, 2020) (denying inmates' release due to COVID-19, in part, because of the PLRA).

[13] Of course, Plaintiffs' request for injunctive relief requiring Director McDonough to provide "adequate medical care" and "appropriate mental health services" also fails because such an injunction would not comply with Rule 65's specificity requirement and would constitute an impermissible "obey the law" injunction. See CPC Intern., Inc. v. Skippy, Inc., 214 F.3d 456, 459 (4th Cir. 2000) (outlining Rule 65's requirements for an injunction); City of N.Y. v. U.S. Dep't of Def., 913 F.3d 423, 431 (4th Cir. 2019) (noting an "obey the law" injunction is "disfavored").

22 (8th Cir. 2008) (affirming termination of consent decree when broad injunctive relief related to health care was not narrowly tailored under PLRA).  Moreover, Plaintiffs' request for an order directing Director McDonough to waive *all* sick call fees fails under the PLRA.  Reynolds v. Wagner, 128 F.3d 166, 173 (3d Cir. 1997) ("There is, of course, no general constitutional right to free health care.").  In sum, Plaintiffs' request for injunctive relief far exceeds the scope of possible remedial relief available to Plaintiffs and is due to be dismissed.

## CONCLUSION

For the foregoing reasons, Director McDonough respectfully requests that this Court issue an Order dismissing the Amended Complaint in its entirety for lack of subject-matter jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6) or, alternatively, granting summary judgment in favor of Director McDonough.[14]

---

[14] Plaintiffs' extraordinary decision to hide the exposed, defenseless nature of their claims by regurgitating the disproven allegations from their initial pleading limited the arguments which Director McDonough could bring in a motion to dismiss the Amended Complaint.  Stated differently, Director McDonough remains confident that the undisputed *facts*, including those facts cited in the Court's June 22, 2020, hearing, will demonstrate that her leadership of PGCDOC through this pandemic comports with constitutional standards.  Director McDonough does not waive, but instead expressly preserves and asserts, all defenses pursuant to Rule 8, which she will assert in an answer to any claims which survive this motion.

Respectfully submitted,

**RHONDA L. WEAVER**
**COUNTY ATTORNEY**

**ANDREW J. MURRAY**
**DEPUTY COUNTY ATTORNEY**

/s/ *Shelley L. Johnson*

Shelley Lynn Johnson, Fed. Id. 15853
Ann Elizabeth Koshy, Fed. Id. 19333
**PRINCE GEORGE'S COUNTY OFFICE OF LAW**
Wayne K. Curry Administration Building
1301 McCormick Drive
Suite 4100
Largo, Maryland 20774
Telephone: (301) 952-5225
Facsimile: (301) 952-3071
ajmurray@co.pg.md.us
sljohnson@co.pg.md.us
aekoshy@co.pg.md.us

William R. Lunsford (*pro hac vice*)
Stephen C. Rogers (*pro hac vice*)
Kenneth S. Steely (*pro hac vice*)
**MAYNARD, COOPER & GALE, PC**
655 Gallatin Street
Huntsville, AL 35801
Telephone: (256) 512-5710
Facsimile: (256) 512-0119
blunsford@maynardcooper.com
srogers@maynardcooper.com
ksteely@maynardcooper.com

Filed:  07/17/20