**UNITED STATES DISTRICT COURT**
**FORT THE DISTRICT OF MARYLAND**

| | |
|---|---|
| Keith Seth, *et al.*, | : |
| Plaintiffs, | : |
| | : |
| v. | : |
| Mary Lou McDonough, in her official capacity as Director of the Prince George's County Department of Corrections | : Civ. Action No. 20-cv-1028-PX |
| | : |
| Defendant. | : |
| | : |
| | : |

**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT OR,**
**ALTERNATIVELY, SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ II

BACKGROUND ............................................................................................................1
    **A.**    **Factual and Procedural History** ..............................................................1
    **B.**    **Defendant's Statement of "Undisputed" Facts** ..................................3

STANDARD OF REVIEW...............................................................................................4

ARGUMENT ...............................................................................................................5

**I.**    **DEFENDANT'S PROCEDURAL ARGUMENTS ARE MERITLESS** ............................6
    **A.**    **Released Named Plaintiffs' Class Action Claims Are Not Moot** ......6
    **B.**    **The PLRA's Administrative Exhaustion Requirement Does Not Bar**
        **Plaintiffs' Claims** ..................................................................................8
    **C.**    **Plaintiffs Properly Carried Forward Allegations From The Initial**
        **Complaint** ............................................................................................9

**II.**   **THE COURT SHOULD DENY DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' NEW**
    **CLAIMS**...............................................................................................10
    **A.**    **Plaintiffs State Eighth and Fourteenth Amendment Violations Based On The**
        **Jail's Lockdown Conditions** ..............................................................10
        1.   Plaintiffs Have Pled An Unreasonable Risk of Serious Harm..................10
        2.   Plaintiffs Have Pled Deliberate Indifference .............................................15
        3.   Defendant's Remaining Arguments are Meritless ....................................17
    **B.**    **Plaintiffs Have Stated Violations of Substantive and Procedural Due**
        **Process** ................................................................................................19
        1.   Pretrial Plaintiffs Have Pled Substantive Due Process Violations ...........19
        2.   Pretrial Plaintiffs Have Pled Procedural Due Process Violations.............23
        3.   Post-Conviction Plaintiffs Have Pled Procedural Due Process
            Violations....................................................................................................25
        4.   Defendant's Procedural Arguments Regarding Plaintiffs' Substantive and
            Procedural Due Process Claims Fail .........................................................28

**III.**  **THIS COURT SHOULD DENY DEFENDANT'S MOTION TO DISMISS PLAINTIFFS'**
    **ORIGINAL CLAIMS** ..............................................................................29
    **A.**    **Plaintiffs Stated Fourteenth Amendment Overdetention Claims** ..................29
    **B.**    **Plaintiffs' Habeas Claim is Cognizable Under § 2241** ......................32

**IV.**  **PLAINTIFFS PLEAD CLAIMS FOR INJUNCTIVE RELIEF**....................................33

CONCLUSION.............................................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alvarez v. Larose*,
Case No. 20-cv-00782-DMS, 2020 WL 2315807 (S.D. Cal. May 9, 2020).........................35

*Bacon v. Greene*,
319 F. App'x 256 (4th Cir. 2009) (per curiam) .......................................................9

*Banks v. Booth*,
20-cv-849, Doc. 100 (D.D.C. June 18, 2020) ........................................................11

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................31

*Bell v. Wolfish*,
441 U.S. 520 (1979).............................................................................20, 21

*Estate of Bryant v. Baltimore Police Dep't*,
No. CV ELH-19-384, 2020 WL 673571 (D. Md. Feb. 10, 2020) .........................................30

*Burgess v. Baltimore Police Dep't*,
No. RDP-15-0834, 2017 WL 4947004 (D. Md. 2017)..................................................31

*Burris v. Hoffman*,
No. 15-cv-3773-DKC, 2015 WL 9268574 (D. Md. Dec. 21, 2015)......................................9

*Carter v. Morris*,
164 F.3d 215 (4th Cir. 1999) ......................................................................30

*Castro v. County of Los Angeles*,
*833 F.3d 1060* (9th Cir. 2016) (en banc) .........................................................11

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)................................................................................32

*Coleman v. Schwarzenegger*,
922 F. Supp. 2d 882 (E.D. & N.D. Cal. 2009).....................................................35

*County of Riverside v. McLaughlin*,
500 U.S. 44 (1991)................................................................................6

*Darnell v. Pineiro*,
849 F.3d 17 (2d 2017).............................................................................11

*Diego A. A. v. Decker*,
   No. CV 20-4337(MCA), 2020 WL 3969948 (D.N.J. July 14, 2020) .....................................13

*Doe v. Barr*,
   20-cv-02263-RMI (N.D. Cal. Apr. 27, 2020) ..........................................................................13

*Farmer v. Brennan*,
   511 U.S. 825 (1994).................................................................................................11, 16, 18

*Freeland v. Ballard*,
   No. 2:11-CV-00443, 2011 WL 7394619 (S.D.W. Va. Aug. 18, 2011) ...................................23

*Garcia v. Montgomery County*,
   No. JFM-12-3592, 2013 WL 4539394 (D. Md. Aug. 23, 2013) .......................................30, 31

*Gatewood v. Juknelis*,
   No. CV ELH-16-1644, 2017 WL 1491361 (D. Md. Apr. 26, 2017) ......................................23

*Genesis Healthcare Corp. v. Symczyk*,
   569 U.S. 66 (2013)...................................................................................................................6

*Georgia Advocacy Office v. Jackson*,
   No. 1:19-CV-1634-WMR-RDC, Doc. 65 (S.D. Ga. July 23, 2019)......................................14

*United States Parole Comm'n v. Geraghty*,
   445 U.S. 388 (1980)..............................................................................................................7, 8

*Gerstein v. Pugh*,
   420 U.S. 103 (1975)..............................................................................................................6, 7

*Gionfriddo v. Jason Zink, LLC*,
   769 F. Supp. 2d 880 (D. Md. 2011) .........................................................................................5

*Greene v. Lau*,
   No. 19-cv-1217-RDB, 2019 WL 4643945 (D. Md. Sept. 24, 2019) ........................................8

*Hardeman v. Curran*,
   933 F.3d 816 (7th Cir. 2019) .................................................................................................11

*Hines v. Anderson*,
   547 F.3d 912 (8th Cir. 2008) .................................................................................................35

*Incumaa v. Ozmint*,
   507 F.3d 281 (4th Cir. 2007) ...................................................................................................7

*Incumaa v. Stirling*,
   791 F.3d 517 (4th Cir. 2015) .................................................................................................26

*Inmates v. Owens*,
 561 F.2d 560 (4th Cir. 1977) ....................................................7

*Khoury v. Meserve*,
 268 F. Supp. 2d 600 (D. Md. 2003) ...........................................3

*Kingsley v. Hendrickson*,
 576 U.S. 389 (2015)...............................................................11

*Madrid v. Gomez*,
 889 F. Supp. 1146 (N.D. Cal. 1995) ...................................14, 15

*Makdessi v. Fields*,
 789 F.3d 126 (4th Cir. 2015) ..................................................16

*Mathews v. Eldridge*,
 424 U.S. 319 (1976)..........................................................25, 28

*Mitchell v. Stump*,
 No. 17-cv-2056-PX, 2018 WL 4468855 (D. Md. Sept. 18, 2018) ............................9

*Monell v. Dep't of Soc. Servs.*,
 436 U.S. 658 (1978)..........................................................29, 30

*Money v. Pritzker*,
 Case No. 20-cv-209, 2020 WL 1820660 (N.D. Ill. Apr. 10, 2020) .......................35

*Moneyhan v. Keller*,
 563 F. App'x 256 (4th Cir. 2014) .............................................7

*Morales Feliciano v. Rossello Gonzalez*,
 13 F. Supp. 2d 151 (D.P.R. 1998).............................................34

*Owens v. Baltimore City State's Attorneys Office*,
 767 F.3d 379 (4th Cir. 2014) .............................................31, 32

*Palakovic v. Wetzel*,
 854 F.3d 209 (3d Cir. 2017)....................................................15

*Peete-Bey v. Educational Credit Mgmt. Corp.*,
 131 F. Supp. 3d 422 (D. Md. 2015) ...........................................4

*Peoples v. Annucci*,
 180 F. Supp. 3d 294 (S.D.N.Y. 2016).....................................13, 15

*Porter v. Clarke*,
 923 F.3d 348 (4th Cir. 2019), (May 6, 2019) ........................... *passim*

*Preiser v. Rodriguez*,
    411 U.S. 475 (1973).............................................................................................32, 33

*Prieto v. Clarke*,
    780 F.3d 245 (4th Cir. 2015) ...........................................................................26, 27

*Quarterman v. Young*,
    No. 5:18-cv-01461, 2020 WL 3442841 (S.D. W.Va. Mar. 11, 2020) ......................7

*Rendelman v. Rouse*,
    569 F.3d 182 (4th Cir. 2009) ...................................................................................7

*Reyes v. United States Immigration & Naturalization Serv.*,
    141 F. App'x 96 (4th Cir. 2005) ..............................................................................7

*Reynolds v. Arnone*,
    402 F. Supp. 3d 3 (D. Conn. 2019).........................................................................14

*Robles v. Prince George's Co.*,
    302 F.3d 262 (4th Cir. 2002) .............................................................................21, 22

*Rondeau v. Mosinee Paper Co.*,
    422 U.S. 49 (1975)...................................................................................................36

*Ross v. Blake*,
    136 S. Ct. 1850 (2016)...............................................................................................8

*Scinto v. Stansberry*,
    841 F.3d 219 (4th Cir. 2016) ..................................................................................16

*Scott v. Siddiqui*,
    Case No. 17-cv-1127-JPG-SCW, 2018 WL 4403310 (S.D. Ill. Apr. 5, 2018).......35

*Semple v. City of Moundsville*,
    195 F.3d 708 (4th Cir. 1999) ..................................................................................32

*Seth v. McDonough*,
    No. 20-cv-1028, 2020 WL 2571168 (D. Md. May 21, 2020)......................... *passim*

*Shakka v. Smith*,
    71 F.3d 162 (4th Cir. 1995) ....................................................................................11

*Sneed v. Joyner*,
    No. 5:18-cv-02448-DCC, 2019 WL 2089544 (D.S.C. May 13, 2019)......................7

*Sosna v. Iowa*,
    419 U.S. 393 (1975)...................................................................................................6

*Tate v. Parks*,
    791 F. App'x 387 (4th Cir. 2019) (per curiam) ................................................................ *passim*

*Toure v. Hott*,
    No. 1:20-CV-395, 2020 WL 2092639 (E.D. Va. Apr. 29, 2020) .............................................33

*Ward v. Warden*,
    No. 17-cv-3084-PX, 2018 WL 2129735 (D. Md. May 9, 2018) .............................................8

*Wilkerson v. Goodwin*,
    774 F.3d 845 (2014) ..............................................................................................................28

*Wilkinson v. Austin*,
    545 U.S. 209 (2005) .........................................................................................................15, 28

*Williams v. Griffin*,
    952 F.2d 820 (4th Cir. 1991) ...................................................................................................8

*Williams v. Holland*,
    735 F. App'x 120 (4th Cir. 2018) .............................................................................................7

*Williamson v. Stirling*,
    912 F.3d 154 (4th Cir. 2018) ............................................................................................ *passim*

*Wilson v. Williams*,
    961 F.3d 829 (6th Cir. 2020) .................................................................................................33

*Wooten v. United States Bureau of Prisons*,
    No. 16-cv-3565-GLR, 2018 WL 1083733 (D. Md. Feb. 28, 2018) ..........................................8

## Federal Statutes

18 U.S.C. § 3626 ................................................................................................................. *passim*

28 U.S.C. § 2241 ................................................................................................................. *passim*

## Other Authorities

*Correctional and Detention Facilities* (July 22, 2020), *available at*
    https://www.cdc.gov/coronavirus/2019-ncov/community/correction-
    detention/guidance-correctional-detention.html ....................................................................17

World Medical Association, WMA Statement on Solitary Confinement (Oct.
    2019), *available at* https://www.wma.net/policies-post/wma-statement-on-
    solitary-confinement/ .............................................................................................................14

On July 3, 2020, Plaintiffs filed an Amended Complaint alleging two new claims based on unconstitutional lockdown conditions at the Prince George's County Jail. Now, after answering Plaintiffs' Initial Complaint, Defendant moves to dismiss Plaintiffs' Amended Complaint in its entirety. Defendant also appears to seek summary judgment on some unspecified portion of the Amended Complaint. Neither dismissal nor summary judgment are warranted.

## BACKGROUND

### A.    Factual and Procedural History

On April 21, 2020, Plaintiffs brought this action challenging the Prince George's County Jail's inadequate and unconstitutional response to the COVID-19 pandemic. *See generally* Compl. (Doc. 2). At the same time, Plaintiffs filed a motion for a temporary restraining order (Doc. 3) and a motion for class certification (Doc. 4). Plaintiffs requested injunctive relief to address the Jail's conditions under the Eighth and Fourteenth Amendments. Plaintiffs also asked this Court to enjoin the Jail's policy of over-detaining COVID-positive prisoners who are legally entitled to release, and to release a subclass of medically vulnerable prisoners under 28 U.S.C. § 2241. *See* Compl. at 41-46.

On May 13, 2020, Defendant answered—instead of moving to dismiss—Plaintiffs' Complaint.  *See* Answer, Doc. 70.

On May 21, 2020, this Court ruled on Plaintiffs' motion for a temporary restraining order granting relief on Plaintiffs' Eighth and Fourteenth Amendment claims. *See Seth v. McDonough*, No. 20-cv-1028, 2020 WL 2571168 (D. Md. May 21, 2020).[1] This Court reasoned that it could not "ignore Defendant's evident disregard for the existence of the clear triple-threat: (1) undertesting, and (2) inadequate treatment and isolation of COVID-19 symptomatic detainees, and (3) no plan

---

[1] This Court denied preliminary relief on Plaintiffs overdetention and § 2241 claims. *See Seth*, No. 20-cv-1028, 2020 WL 2571168, at *14-15.

for those at high risk of COVID-19 complications." *Id.* at 26. The Court later permitted the TRO to expire. Paperless Order, Doc. No. 119.

The parties then entered, and are currently engaged in, fact discovery on Plaintiffs' claims. *See* Scheduling Order, Doc. 121. Both sides have issued written discovery requests, one deposition has been taken, and several more are currently being scheduled.

On July 3, 2020, Plaintiffs filed an Amended Complaint, adding two new claims. Am. Compl., Doc. 124 [hereinafter "FAC"]. The new claims challenge Defendant's use of a generalized, indefinite lockdown at the Jail to combat COVID-19. FAC ¶¶ 266-278. Specifically, Plaintiffs allege that the lockdown—wherein most detainees are confined to their cells for 23 hours a day under restrictive conditions—creates an unreasonable risk of serious physical and psychological harm to prisoners in violation of the Eighth And Fourteenth Amendments. FAC ¶¶ 266-271 (Count IV). Plaintiffs also allege that, because the lockdown is imposed indiscriminately and without adequate procedural protections, it violates prisoners' Fourteenth Amendment rights to due process of law. FAC ¶¶ 272-278 (Count V).

Plaintiffs added detailed allegations in support of these new claims. FAC ¶¶ 187-240, 266-278. However, Plaintiffs did not amend the original claims, which Defendant had already answered, Answer, Doc. 70. Instead, Plaintiffs acknowledged in a footnote that the original allegations and claims remained unaltered, and thus represent the facts at the time Plaintiffs' initial Complaint was filed. *See* FAC note 2 (stating that "[the] allegations in paragraphs 2-186 describe the state of the Prince George's County Jail . . . at the time Plaintiffs filed their Complaint on April 21, 2020).

Now, Defendant asks this Court to dismiss Plaintiffs' Amended Complaint "in its entirety"—despite having already answered[2] and engaged in some fact discovery. Def's Mem. in Supp. of Mot. to Dismiss (Doc. 128-1) at 33 [hereinafter "Memo."] Defendant also moves for summary judgment on some unspecified portion of the Amended Complaint.[3] Plaintiffs infer that Defendant intended to move for summary judgment in the alternatively solely on administrative exhaustion under the Prison Litigation Reform Act (PLRA).[4]

### B.    Defendant's Statement of "Undisputed" Facts

Defendant includes a summary of facts it contends are "undisputed." Memo at 5-7. Plaintiffs briefly respond to those contentions here.

Plaintiffs do not dispute that the five Plaintiffs identified by Defendant have been released from the Jail. (However, this fact does not moot any claim.). Nor do Plaintiffs dispute that they did not file grievance forms. However, Plaintiffs did not do so only because no grievance procedure was available to them.[5] Plaintiffs have submitted numerous declarations from prisoners at the Jail explaining that they are unable to file grievances because Jail staff refuse to give them grievance

---

[2] Fed. R. Civ. P. 12(b) ("A motion asserting . . . defenses [under Rule 12(b)] must be made before pleading if a responsive pleading is allowed.").

[3] While Defendant's motion is styled as a motion to dismiss or for summary judgment, it is difficult to decipher precisely on which claims Defendant believes she is entitled to summary judgment. *See* Fed. R. Civ. P. (7)(b)(1)(C) ("A request for a court order must be made by motion. The motion must: . . . (C) state the relief sought.").

[4] Summary judgment is substantively referenced only in footnotes in the PLRA exhaustion section of her memo. *See* Memo at 11 n.7, 12 n.8. Accordingly, Plaintiffs assume that Defendant intended to seek summary judgment in the alternative only on the PLRA exhaustion claim. If Defendant clarifies this issue in her reply and claims to seek summary judgment on more than the PLRA exhaustion issue, Plaintiffs intend to seek leave to file a surreply. *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003) ("Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply.").

[5] Defendant relies on a newly submitted declaration that has not be tested by the adversarial process for its representations about the Jail's grievance procedure.

forms.[6] These accounts are consistent with the grievance procedure outlined in the Jail's Inmate Handbook, which requires inmates to overcome several hurdles before they may even request a grievance form (which can only be provided by a Zone Commander).[7] In addition, the Court-appointed Independent Inspector, Dr. Carlos Franco-Paredes, found that "[t]here is no existing functioning protocol for inmates to report grievances of recent negative events." Doc. 65-1 at 8.

The evidence that Defendant cites in characterizing the grievance process confirms the barriers inmates face in accessing it. *See, e.g.* Decl. of Luke S. Dixon, (Doc. 130) ¶¶ 8-9 (describing the process by which an inmate must request a grievance form). In light of Plaintiffs' record evidence, this factual dispute should be subject to the ongoing discovery process.

## STANDARD OF REVIEW

"When ruling on a motion under Rule 12(b)(6), the court must 'accept the well-pled allegations of the complaint as true,' and 'construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.'" *Peete-Bey v. Educational Credit Mgmt. Corp.*, 131 F. Supp. 3d 422, 427 (D. Md. 2015) (quoting *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997)). In deciding a motion to dismiss, courts may "consider documents incorporated into the complaint by reference." *Id.* (quoting *United States ex rel. Oberg. v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014)).

---

[6] *See, e.g.*, Ex. 9 (Doc. 2-1 at 9) ¶ 38; Ex. 11, Decl. 11 (Doc. 2-1 at 66) ¶ 38; Ex. 14, Decl. 14 (Doc. 2-1 at 78) ¶ 10; Ex. 19, Decl. 19 ¶ 11 (Doc. 2-1 at 108); Ex. 23, Decl. 23 (Doc. 2-1 at 112) ¶ 9; Ex. 24, Decl. 24 (Doc. 2-1 at 116) ¶ 12; Ex. 25, Decl. 25 ¶ 15; Ex. H, Decl. 28 (Doc. 44-1 at 104) ¶ 25; Burch Decl. (Doc. 2-1) ¶ 14; Smith Decl. (Doc. 2-1) ¶¶ 14-15.

[7] *See* Doc. 37-4 at 76 (requiring inmates to first "seek informal resolution" with a housing officer; then, if that is unsuccessful, the inmate must "discuss the complaint" with a Zone Commander; if resolution cannot be reached after discussion with the Zone Commander," only then may an inmate "*request* an Inmate Grievance Form") (emphasis added).

"Rule 56 of the Federal Rules of Civil Procedure provides that a court 'shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 889 (D. Md. 2011) (quoting Fed. R. Civ. P. 56(a)). "In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party." *Id.* (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

## ARGUMENT

Defendant asks this Court to dismiss the Amended Complaint "in its entirely." Memo at 33. Specifically, Defendant argues that five of the eight Plaintiffs' claims must be dismissed at moot because those plaintiffs have been released from the Jail. Memo at 8-10. And Defendant argues that all Plaintiffs' claims must be dismissed because they did not satisfy the exhaustion requirements under the Prison Litigation Reform Act (PLRA). Defendant also appears to seek summary judgment on the exhaustion argument. Separately, Defendant questions Plaintiffs' decision to amend the allegations in the Complaint only as to their new claims (although it is unclear what Defendant sees as the legal implication of this argument).

In addition, with respect to three of Plaintiffs' claims—Plaintiffs' two new claims challenging the Jail's lockdown conditions (Counts IV and V) and Plaintiffs' Fourteenth Amendment overdetention claim (Count II), which was pled in the original Complaint, Defendant contends that Plaintiffs have not adequately stated claims. Finally, Defendant argues that Plaintiffs' claim for habeas relief (Count III) must be dismissed because it is not cognizable under 28 U.S.C. § 2241.

As described below, Defendant's arguments fail, and Defendant is not entitled to dismissal or summary judgment.

## I.    DEFENDANT'S PROCEDURAL ARGUMENTS ARE MERITLESS

### A.    Released Named Plaintiffs' Class Action Claims Are Not Moot

The release of some Named Plaintiffs does not moot the class claims alleged in the Amended Complaint.[8] First, as a matter of settled law, the termination of a particular plaintiff's membership in the class does not moot class claims where the questions at issue in the litigation are "capable of repetition yet evading review." *See Sosna v. Iowa*, 419 U.S. 393, 400-01 (1975).

Claims involving pretrial detention are the paradigmatic example of those to which this exception applies. As the Supreme Court explained in *Gerstein v. Pugh*, "Pretrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted." 420 U.S. at 110 n.11. Therefore, pretrial detention class claims "belong[] . . . to that narrow class of cases in which the termination of a class representative's claim does not moot the claims of the unnamed members of the class." *Id.; see Genesis Healthcare Corp.*, 569 U.S. at 76 (citing pretrial detention claims as an example of claims that do not become moot when class representative claims terminate).

Furthermore, class claims in this category remain viable even if the named plaintiffs' claims become moot *before* class certification. *See County of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991) ("That the class was not certified until after the named plaintiffs' claims had become moot does not deprive us of jurisdiction.").

Here, each of the Named Plaintiffs were incarcerated at the time the Initial Complaint and the Motion for Class Certification were filed, and the Amended Complaint relates back to when

---

[8] At least one Named Plaintiff representative of each class and subclass remained incarcerated at the Jail when the Amended Complaint was filed (and still remain incarcerated there). Therefore—even accepting Defendant's incorrect mootness theory—there are sufficient Named Plaintiffs to carry forward claims alleged against Defendant.

the litigation was initiated, *see infra* at 9-10. Furthermore, the Jail consists of pretrial detainees and convicted prisoners serving short sentences or present for brief stays (for instance, for a legal proceeding). Moreover, "[a]ll members of both classes are actively seeking . . . release[], whether by paying bail, acquittal, early release, or some other means." FAC ¶ 260. Accordingly, the claims alleged by Named Plaintiffs are precisely the type of class claims that would escape judicial review but for the "inherently transitory" exception to mootness. *See, e.g.*, *Gerstein*, 420 U.S. at 110 n.11. Accordingly, the release of some Named Plaintiffs does not moot the class claims in the Amended Complaint.

Tellingly, none of the cases relied on by Defendant in support of her mootness argument concern class claims.[9] Indeed, several of the cases relied on by Defendant note the legal significance of the absence of class claims to the mootness issue in those cases.[10]

Separately, once a motion for class certification is filed, the named plaintiffs maintain a legal interest in the suit until the class certification issue is fully resolved, regardless of whether named plaintiffs will benefit from the results of the suit. *See Geraghty*, 445 U.S. at 403 ("We conclude that these elements [of standing] can exist with respect to the class certification issue notwithstanding the fact that the named plaintiff's claim on the merits has expired.").

---

[9] *See, e.g.*, *Rendelman v. Rouse*, 569 F.3d 182, 183-185 (4th Cir. 2009) (no class claims alleged); *Incumaa v. Ozmint*, 507 F.3d 281, 282-283 (4th Cir. 2007) (same); *Inmates v. Owens*, 561 F.2d 560, 561-562 (4th Cir. 1977) (same); *Moneyhan v. Keller*, 563 F. App'x 256, 257-258 (4th Cir. 2014) (same); *Williams v. Griffin*, 952 F.2d 820, 821-822 (4th Cir. 1991) (same); *Reyes v. United States Immigration & Naturalization Serv.*, 141 F. App'x 96, 97 (4th Cir. 2005) (same); *Williams v. Holland*, 735 F. App'x 120, 121 (4th Cir. 2018) (same); *Quarterman v. Young*, No. 5:18-cv-01461, 2020 WL 3442841, at *1-*3 (S.D. W.Va. Mar. 11, 2020) (same); *Sneed v. Joyner*, No. 5:18-cv-02448-DCC, 2019 WL 2089544 (D.S.C. May 13, 2019) (same).

[10] *See Inmates*, 561 F.2d at 562 (noting that "[t]he suit below was not filed, nor was it ever certified, as a class action"); *see also Incumaa*, 507 F.3d at 288-289 (noting the different mootness rules applicable to class action claims).

Plaintiffs' motion for class certification was filed when Plaintiffs were still incarcerated at the Jail.[11] *See* Mot. to Certify Class, Doc. No. 4 (filed on Apr. 21, 2020). Accordingly, Named Plaintiffs retain a sufficient legal interest in the resolution of that motion until it is resolved. *See Geraghty*, 445 U.S. at 403.

### B. The PLRA's Administrative Exhaustion Requirement Does Not Bar Plaintiffs' Claims

Under the Prison Litigation Reform Act (PLRA), Plaintiffs are not required to exhaust an administrative process that is not available to them. *See, e.g.*, *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016). In *Ross*, the Supreme Court described several circumstances in which an administrative process is considered "unavailable" under the PLRA. *Id.* at 1859-1860. One such circumstance is "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.*

Here, the record includes abundant evidence that prisoners at the Jail are "thwart[ed]" from submitted grievances: Jail staff do not give prisoners access to grievance forms, and the Jail's official grievance procedure facilitates this problem. *See supra* at 3-4 (describing and citing this evidence). Accordingly, the prisoners' "duty to exhaust 'available' remedies does not come into play." *Ross*, 136 S. Ct. at 1859.[12]

---

[11] This Court held Plaintiffs' motion for class certification in abeyance pending the resolution of the motion for a temporary restraining order. Order, Doc. 24 (Apr. 23, 2020). Subsequently, this Court entered a scheduling order that leaves the motion for class certification pending until early 2021. Scheduling Order, Doc. 121 (July 6, 2020).

[12] Given this evidentiary record, the cases Defendant cites do not support her argument. *See, e.g.*, *Greene v. Lau*, No. 19-cv-1217-RDB, 2019 WL 4643945 (D. Md. Sept. 24, 2019) (no evidentiary record showing the unavailability of the grievance process); *Ward v. Warden*, No. 17-cv-3084-PX, 2018 WL 2129735 (D. Md. May 9, 2018) (same) ; *Wooten v. United States Bureau of Prisons*, No. 16-cv-3565-GLR, 2018 WL 1083733 (D. Md. Feb. 28, 2018) (same); Indeed, at least two of the cases that Defendant relies on involved plaintiffs who filed complaints in district court even though they were still in the middle of the grievance process. *See Mitchell v. Stump*, No. 17-cv-2056-PX,

Defendant now submits a new declaration describing the Jail's grievance procedures. *See* Decl. of Luke S. Dixon, Doc. 130. As described above, this declaration supports key aspects of Plaintiffs' account about why they cannot access grievance forms. *See supra* at 4. To the extent the declaration contradicts Plaintiffs' evidence about the availability of the Jail's grievance procedure, this is a factual dispute capable of resolution in the ongoing discovery process. Accordingly, Defendant is not entitled to dismissal or summary judgment on administrative exhaustion grounds. *See* Fed. R. Civ. P. 56(a) (stating that summary judgment is inappropriate where there exist genuine factual disputes).[13]

### C.    Plaintiffs Properly Carried Forward Allegations From The Initial Complaint

Defendant makes much of the fact that Plaintiffs amended the allegations in the Amended Complaint only as to Plaintiffs' new claims, and, on all other matters, carried forward the allegations from the Initial Complaint. Memo. 2, 5-6.[14] Defendant does not appear to contend that this issue has any legal significance.

Regardless, Plaintiffs' actions were proper. Plaintiffs amended their Initial Complaint solely to add counts regarding Defendant's unconstitutional lockdown policy. However, it is regular practice to file a complete pleading even if plaintiff is merely amending to make a few

---

2018 WL 4468855, at *5 (D. Md. Sept. 18, 2018); *Burris v. Hoffman*, No. 15-cv-3773-DKC, 2015 WL 9268574, at *2 (D. Md. Dec. 21, 2015).

[13] *See, e.g.*, *Bacon v. Greene*, 319 F. App'x 256, 258 (4th Cir. 2009) (per curiam) (allowing Plaintiffs' claims to proceed there "there [wa]s a genuine issue as to whether officials withheld information that made an administrative filing futile or impossible.").

[14] In their Amended Complaint, Plaintiffs added factual allegations solely to support the addition of two new counts. *See* Redline Comparison of Initial and Am. Compls., Doc. No. 124-1 (showing the addition of factual allegations and counts related to the Jail's unconstitutional lockdown conditions). In a footnote, Plaintiffs noted that all other allegations—which pertain to the original claims Defendant had already answered—had not been altered. *See* FAC note 2 (stating that "[the] allegations in paragraphs 2-186 describe the state of the Prince George's County Jail . . . at the time Plaintiffs filed their Complaint on April 21, 2020).

additions.[15] Moreover, Plaintiffs' new claims and allegations relate back to the original Complaint. *See* Fed. R. Civ. P. 15(c)(1)(B) ("An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading."); *see* Compl. (Doc. 2) ¶¶ 132-147, 162-166 (allegations in the initial Complaint describing the lockdown conditions and the harms they imposed). Accordingly, Plaintiffs properly carried forward their allegations from the Initial Complaint.

## II.    THE COURT SHOULD DENY DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' NEW CLAIMS

Plaintiffs sufficiently pled claims under the Eighth and Fourteenth Amendments (Counts IV and V) related to Jail's generalized lockdown policies. Defendant's arguments are meritless.

### A.    Plaintiffs State Eighth and Fourteenth Amendment Violations Based On The Jail's Lockdown Conditions

The Jail's universal, indefinite lockdown subjects Plaintiffs and putative class members to a substantive risk of significant physical and psychological injury. Defendant has maintained these restrictions despite awareness of the harms they cause. Moreover, contrary to public health advice, Defendant relies on the lockdown in lieu of numerous alternative means available for preventing the spread of COVID-19. This violates the Eighth and Fourteenth Amendments.

#### 1.    Plaintiffs Have Pled An Unreasonable Risk of Serious Harm

The Eighth Amendment includes both "objective" and "subjective" components.[16] *See* *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To meet the objective prong, a detainee must show

---

[15] *See* Commentary, Fed. R. Civ. P. Rule 15. ("Rule 15 does not specify any particular form for an amended pleading. The prevailing practice is to file a complete new pleading, even if the amended pleading contains just a few changes to the prior pleading.").

[16] Pretrial detainees challenging their conditions of confinement under the Fourteenth Amendment not meet the Eighth Amendment's deliberate indifference standard. In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Supreme Court "held that the presumptively innocent plaintiff-detainee

that he faces "a substantial risk of . . . serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995).

Plaintiffs allege that, under the Jail's universal lockdown policy, most prisoners in the Jail are locked in approximately 70-square-foot cells for at least 23 hours per day, although some (inconsistently) receive a second hour (inconsistently). FAC ¶¶ 188-195. Their out-of-cell time—which might be granted only at 1 or 2 am—is their only opportunity to use phones to contact family, shower, access cleaning products, or spend time in the small space outside (which is often unavailable for days at a time). *Id.* ¶¶ 193, 196, 200. While in their cells, prisoners have no audio players, televisions, or tablets, and limited or no access to reading materials. *Id.* ¶¶ 205-209; *see also id.* ¶¶ 133-135, 142-143, 145-147, 187-212, 215-216, 234-238.

These conditions create a substantial risk of harm. *See id.* ¶¶ 163-164, 166, 213-215, 217-229 (describing these risks in detail, with citations to scientific and public health authorities).

---

need only establish, in his excessive force claim under the due process clause of the Fourteenth Amendment, that the official acts were objectively unreasonable; the plaintiff need not also show the official intended to violate plaintiff's rights or 'acted for reckless disregard for his rights.'" *Seth v. McDonough*, No. 20-cv-1028, 2020 WL 2571168, at *11 (D. Md. May 21, 2020) (quoting *Kingsley*, 576 U.S. at 403). Based on *Kingsley*, numerous courts have held that pretrial detainees challenging their conditions of confinement under the Fourteenth Amendment need only satisfy an objective standard. *See, e.g.*, *Hardeman v. Curran*, 933 F.3d 816, 821-23 (7th Cir. 2019); *Darnell v. Pineiro*, 849 F.3d 17, 32-36 (2d 2017); *Castro v. County of Los Angeles, 833 F.3d 1060, 1070* (9th Cir. 2016) (en banc). In its Opinion on Plaintiffs' Motion for a Temporary Restraining Order, this Court stated that it "agrees . . . that no meaningful analytical difference exists between the constitutional violations raised in *Kingsley* and those presented here." *Seth v. McDonough*, No. 20-cv-1028, 2020 WL 2571168, at *11 (D. Md. May 21, 2020); *accord* Opinion, *Banks v. Booth*, 20-cv-849, Doc. 100 at 9-12 (D.D.C. June 18, 2020) (concluding, although the D.C. Circuit has not opined on the issue, a pretrial detainee need only show objective unreasonableness). This Court "defer[red] the ultimate decision on this legal question because Plaintiffs ha[d] established a likelihood of success on the merits even under the more exacting [deliberate indifference] standard." *Id.* Here, too, Plaintiffs have sufficiently pled deliberate indifference and this Court still need not decide what standard applies. However, if this Court reaches the issue, Plaintiffs submit that the Pretrial Class members need only satisfy an objective standard to state their Fourteenth Amendment claims.

Plaintiffs identify "[a] robust body of empirical evidence" demonstrating that "solitary confinement conditions like those at the Jail under lockdown consistently result in serious psychological and physiological harm." *Id.* ¶¶ 217, 219. "Psychological injuries may include cognitive dysfunction, paranoia, panic, severe depression, hallucination, memory loss, insomnia, and stimuli hypersensitivity." *Id.* ¶ 221 (citation omitted).[17] Physiological injuries may include (for example) "hypertension, heart palpitations, gastrointestinal disorders, severe insomnia, and dementia." *Id.* ¶ 225 (citations omitted).

Plaintiffs also cite experts who opine that the Jail's lockdown conditions will likely cause severe harms. For instance, Dr. Craig Haney, a psychologist specializing in the effects of restrictive confinement conditions, states that the Jail's lockdown conditions "are essentially identical to the solitary confinement-type housing that has been shown to place prisoners at a significant risk of grave harm (including damage that is permanent, even fatal)." *Id.* ¶ 164 (quoting Ex. 34, Haney Decl. ¶ 20, Doc. 2-1 at 209); *see also id.* ¶ 220.[18] Separately, Dr. Robert Sapolsky, a neuroendrocrinologist, explains that "the severe stress caused by the Jail's lockdown conditions is also likely to depress immune response and increase the risk of severe illness and death from COVID-19." *Id.* ¶ 226 (citing Sapolsky Decl. ¶¶ 33, 39, Doc. 41-1 at 83-84, 85).[19]

---

[17] The risks of these harms are intensified because, as Plaintiffs allege, "[m]ental health services are limited or non-existent, and the Jail "does not . . . assess or otherwise check on detainees to determine whether they are experience the psychological and physical consequences of solitary confinement." FAC ¶ 202.

[18] Dr. Haney's declaration, which described the lockdown's probably effects in detail, is incorporated by reference into the Amended Complaint. Doc 120 ¶ 241 ("All of the exhibits cited in and attached to this Complaint are incorporated by reference."); *see* Ex. 34, Haney Decl. ¶ 20, Doc. 2-1 at 203-212. As alleged in the Amended Complaint, "Dr. Haney's research on solitary confinement has been cited by numerous federal courts, including, recently, the Fourth Circuit, *see Porter v. Clarke*, 923 F.3d 348, 356 (4th Cir. 2019), *as amended* (May 6, 2019)." FAC ¶ 220 n. 105.

[19] Several courts have recognized that severe stress suppresses immune response and enhances the risks posed by COVID-19. *See, e.g.*, *Diego A. A. v. Decker*, No. CV 20-4337(MCA), 2020 WL

These allegations plainly satisfy the objective test. However, Defendant contends that the lockdown conditions "do not equate to 'solitary confinement' or implicate the possible risk of harm related to 'solitary confinement'" because some prisoners receive up to two hours of out-of-cell time, some prisoners have cellmates, and because the lockdown has not lasted for years. Memo. 19-20. This argument fails. Plaintiffs' allegations directly contradict these assertions, and Defendant's effort to dispute them is inappropriate at the pleading stage.[20] Moreover, Defendant's argument is contrary to both scientific literature and the law.

First, authorities—including the U.S. Department of Justice—define "solitary confinement" as being confined in one's cell for 22 or more hours per day. *See Peoples v. Annucci*, 180 F. Supp. 3d 294, 298 (S.D.N.Y. 2016) (noting "the Department of Justice defined [solitary confinement] as 'the state of being confined to one's cell for approximately 22 hours per day or more, alone or with other prisoners, ... [with] limit[ed] contact with others'"); *see also Reynolds v. Arnone*, 402 F. Supp. 3d 3, 17, 23 (D. Conn. 2019) (finding solitary confinement conditions and

---

3969948, at *10 (D.N.J. July 14, 2020) (crediting a declaration from Dr. Sapolsky and concluding that "Petitioners' mental health conditions contribute to high levels of stress, which in turn negatively enhances the immune system," rendering them more vulnerable to COVID-19); Order (Doc. 13), *Doe v. Barr*, 20-cv-02263-RMI, at 4, 6 (N.D. Cal. Apr. 27, 2020) (concluding that a detainee faced an increased risk of COVID-19 because he had experienced prolonged psychological stress).

[20] Plaintiffs do more than merely allege that solitary confinement—in the abstract—produces serious harms. Rather, Plaintiffs specifically allege that the Jail's particular lockdown conditions will do so. *See, e.g.*, FAC ¶ 164, 220 (Dr. Haney's assessment of the risks posed by the Jail's particular lockdown conditions); *id.* ¶¶ 219-221 (describing psychological harms that result from "solitary confinement conditions *like those at the Jail under lockdown*) (emphasis added); *id.* ¶ 225 (describing physiological harms that "consistently result from solitary confinement conditions *like those at the Jail*") (emphasis added).

Eighth Amendment violation where the prisoner "[wa]s confined to his cell an average of 21 to 22 hours per day.").[21]

Second, the fact that some prisoners have cellmates "'does not mitigate the effects of their essentially around-the-clock-in-cell confinement.'" FAC ¶ 227 (quoting Ex. 34, Haney Decl. ¶ 20, Doc. 2-1 at 209). "'In fact, it may exacerbate these effects because of the interpersonal tensions and stressors that such unavoidably close around-the-clock contact generates.'" *Id.* (quoting Ex. 34, Haney Decl. ¶ 20, Doc. 2-1 at 209). Courts have credited this conclusion. *See Madrid v. Gomez*, 889 F. Supp. 1146, 1229–30 (N.D. Cal. 1995) (finding that prisoners incarcerated in the SHU for any length of time were "deprived of normal human contact regardless of whether they are single or double celled" because "two persons housed together in this type of forced, constant intimacy have an 'enormously high risk of becoming paranoid, hostile, and potentially violent towards each other'").[22] More broadly, courts have described conditions as "solitary confinement" where prisoners have far more social interaction and stimulation than do prisoners at the Jail under lockdown. *See, e.g.*, *Reynolds*, 402 F. Supp. 3d at 17, 23 (finding solitary confinement conditions and an Eighth Amendment violation where the prisoner was allowed congregate, 15-20 minute meals with others twice a day, and the prisoner's cell was furnished with TV, radio, and video games).[23]

---

[21] *See also* World Medical Association, WMA Statement on Solitary Confinement (Oct. 2019) available at https://www.wma.net/policies-post/wma-statement-on-solitary-confinement/ ("Solitary confinement is a form of confinement used in detention settings where individuals are separated from the general detained population and held alone or in a separate cell or room for upwards of 22 hours a day.").

[22] *See also* Order, *Georgia Advocacy Office v. Jackson*, No. 1:19-CV-1634-WMR-RDC, Doc. 65 (S.D. Ga. July 23, 2019) (granting preliminary injunction to remedy solitary confinement conditions in which prisoners were double celled); FAC ¶ 227 n. 106 (citing *Madrid* and *Jackson*).

[23] *See also Wilkinson v. Austin*, 545 U.S. 209, 214 (2005) (describing Ohio's "administrative control units" as "a highly restrictive form of solitary confinement"), *citing Austin v. Wilkinson*,

Third, as the Amended Complaint explains, "[t]he consequences of solitary confinement manifest after even relatively short time-periods." FAC ¶ 228. Indeed, as the Fourth Circuit recognized in *Porter v. Clark*, "[T]he leading survey of the literature regarding [solitary] confinement found that 'there is *not a single published study* of solitary or supermax-like confinement in which nonvoluntary confinement lasted for longer than 10 days . . . *that failed to result in negative psychological effects*." 923 F.3d 438, 356 (4th Cir. 2019), *as amended* (May 6, 2019); *see* FAC ¶ 228.[24] Accordingly, courts have found that much shorter durations of solitary confinement can violate the Eighth Amendment. *See, e.g.*, *Palakovic v. Wetzel*, 854 F.3d 209, 217 (3d Cir. 2017) (holding plaintiff had properly alleged 8th Amendment violation where he was subjected to "multiple 30-day stints in solitary confinement"); *cf. Dilworth v. Adams*, (rejecting argument that prisoner's 85 days in disciplinary segregation was "de minimis").[25]

### 2.    Plaintiffs Have Pled Deliberate Indifference

Plaintiffs have also satisfied the "subjective" prong of the "deliberate indifference" inquiry, which requires a plaintiff to show that 'the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (quoting *Farmer*, 511 U.S. at 837).

---

189 F. Supp. 2d 719, 724-25 and n.5 (N.D. Ohio 2002) (describing that prisoners in the administrative control units live in open-faced cells, have access to outside recreation every day, and are able to communicate with other people).

[24] *See also Annucci*, 180 F. Supp. 3d 294, 299 (S.D.N.Y. 2016) ("After even relatively brief periods of solitary confinement, inmates have exhibited symptoms such as hypersensitivity to stimuli, perceptual distortions and hallucinations, increased anxiety, lack of impulse control, severe and chronic depression, appetite and weight loss, heart palpitations, sleep problems, and depressed brain functioning").

[25] Further, Plaintiffs allege that the lockdown's duration is indefinite, FAC ¶¶ 136, 211, which renders a lockdown more psychologically harmful. *See id.* ¶ 229; *Madrid*, 889 F. Supp. at 1264 ("Courts have recognized that conditions in segregation could cross [the line into "psychological torture"], particularly, where the length of segregation is indefinite or long term.").

- 15 -

Defendant knew that the lockdown would be harmful, but implemented it anyway. *See* FAC ¶ 231 (quoting email from a Department of Corrections official shortly before the lockdown stating, "With the existing elevated state of anxiety among inmates and staff, it would be more harmful to isolate inmates").[26] Moreover, given the "extensive scholarly literature" on the harms of solitary confinement, "the risk of such harm[s] w[ere] so obvious that [they] had to have been known." *Porter*, 923 F.3d at 361; *Makdessi v. Fields*, 789 F.3d 126, 136 (4th Cir. 2015) (stating that a plaintiff may show deliberate indifference where the risk was "obvious"). As the Fourth Circuit found in *Porter*, "Given [Defendant's] status as [a] correctional professional[], it would defy logic to suggest that [Defendant] w[as] unaware of the potential harm that the lack of human interaction . . . could cause." *Porter*, 923 F.3d at 361. Further still, Defendant has not only continued the lockdown, FAC ¶ 187, but has also failed to assess prisoners for mental health symptoms that may result from it, *id.* ¶ 204.

Defendant contends that the Jail cannot be liable for the lockdown because it "was instituted as a necessary response to the COVID-19 pandemic." Memo. 29. In making this argument, Defendant relies on the Fourth Circuit's conclusion in *Porter* that prison officials can avoid a finding of deliberate indifference for solitary confinement conditions if they "reasonably determine" that those conditions "are necessary to protect the well-being of prison employees, inmates, and the public or serve some other legitimate penological objective." *Porter*, 923 F.3d at 363.

But the Jail's generalized, indefinite lockdown was *not* "necessary" to prevent the spread of COVID-19. Specifically, Plaintiffs allege that Defendant has numerous alternative means to

---

[26] In addition, "the risk of psychological and physiological harms imposed by the Jail's lockdown have been repeatedly and explicitly enumerated by Plaintiffs and by experts during this litigation." *Id.* ¶ 232. However, the lockdown persists. *Id.* ¶ 233.

prevent COVID-19's spread. *See, e.g.*, FAC ¶¶ 138 (describing alternatives recommended by the Centers for Disease Control (CDC)); *see also id.* ¶¶ 137, 239, 240. Generalized lockdowns are not recommended by the CDC, which "only recommends something akin to lockdown—that housing units 'quarantine in place'—when there is 'contact with a case from the same housing unit' and that all quarantines—including this sort—last for just 14 days." FAC ¶ 138; *see also id.* ¶¶ 137-39, 239. Public health authorities likewise advise against indefinite, preemptive lockdowns. *Id.* ¶¶ 140-41.[27] Both the existence of alternatives and consensus against generalized and indefinite lockdowns bar the conclusion that implementing one is "necessary."

Moreover, even if it were "necessary" to confine all prisoners to their cells for 22 to 23 hours per day, Defendant makes no attempt to suggest that the punitive restrictions that accompany the lockdown are necessary. Detainees on lockdown have limited or no access to mental health treatment, FAC ¶ 202, limited or no reading materials to use in their cells, *id.* ¶¶ 205-07, no access to the law library and "no audio players, television, tablets, or other materials for entertainment or stimulation," *id.* ¶ 208. These restrictions are not necessary to prevent infection. Accordingly, Defendant's argument fails.

3.     Defendant's Remaining Arguments are Meritless

Defendant raises several additional meritless arguments against this claim. First, Defendant contends that "the Amended Complaint fails to identify any Plaintiffs who experienced any harmful effects from the lockdown or that any Plaintiff faced 'a substantial risk of serious harm' from the lockdown." Memo. 26. Defendant suggests that, "[b]y failing to include any allegations

---

[27] Updated Guidance from the CDC, posted on July 14, 2020, forcefully advises against the use of punitive lockdown conditions like those at the Jail to manage COVID-19. Centers for Disease Control and Prevention, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities* (July 22, 2020), *available at* https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (hereinafter "CDC Guidance").

regarding Plaintiffs' circumstances," Plaintiffs ask the Court to "*speculat[e]* that they suffered a constitutional deprivation to the Facility's lockdown." *Id.*

This is not true. In the Amended Complaint and declarations incorporated by reference, FAC ¶ 241, Plaintiffs allege that they are subject to the lockdown and describe its effects on them.[28] More fundamentally, this argument misses the point. Plaintiffs have alleged that "all prisoners" at the Jail are subject to the lockdown conditions, FAC ¶ 132, and Plaintiffs allege in detail that those conditions impose significant risks of serious harm. Thus, all prisoners at the Jail—including Plaintiffs and putative class members—are exposed to this harm.[29] *See Farmer v. Brennan*, 511 U.S. 825, 843 (1994) (noting that the Eighth Amendment protects prisoners against "a substantial risk of serious damage to his future health," regardless of whether he faces that risk "for reasons personal to him or because all prisoners in his situation face such a risk") (quotations omitted).

Defendant also contends that Plaintiffs' claims fail because they do not allege "a particular constitutional injury to Plaintiffs due to the lockdown." Memo. 19 (quotations omitted). Again, Defendant misunderstands Plaintiffs' claims. Under the Eighth and Fourteenth Amendments, exposure to a substantial risk of significant harm violates prisoners' rights—even if the harm never

---

[28] *See, e.g.*, FAC ¶¶ 134 n. 80, 143 n. 82, 145; Ex. 1, Keith Seth Decl. (Doc. 2-1 at 3-7) ¶¶ 9, 13-14; Ex. 2, David Smith Decl. (Doc. 2-1 at 8-11) ¶ 8; Ex. 3, Mario Burch Decl. (Doc. 2-1 at 12-15) ¶ 4; Ex. 4, John Doe No. 2 Decl. (Doc. 2-1 at 19-24) ¶¶ 9, 12, 22; Ex. 7, John Doe. No. 4 Decl. (Doc. 2-1 at 29-31) ¶¶ 6, 7, 14; Ex. 7, John Doe. No. 4 Decl. (Doc. 2-1 at 32-31) ¶ 8.

[29] Although Defendant suggests otherwise, minor variability in the lockdown conditions does not alter this conclusion. To start, Defendant's claim that lockdown conditions vary "wide[ly]" is untrue—Plaintiffs' allegations describe only slight variations in lockdown conditions. *See, e.g.*, FAC ¶ 196 (alleging that prisoners get an "hour (or maybe two)" of out-of-cell recreation time); *id.* ¶ 202 ("Mental health services are limited or nonexistent."); *id.* ¶ 205 ("Access to reading materials is limited or non-existent."). Regardless, in alleging that the lockdown conditions impose a substantial risk of serious harm, Plaintiffs never suggest that this is not the case when, for example, a prisoner can occasionally leave his cell for two hours instead of one. To the contrary, Plaintiffs make clear that the most significant variation in lockdown conditions—whether the prisoner has a cellmate—does not alter the harms the lockdown imposes. *Id.* ¶ 227.

comes to pass. *Helling*, 509 U.S. at 33 (noting that the Eighth Amendment protects inmates from exposure to infectious diseases "even though the possible infection might not affect all of those exposed."). Thus, *exposure* to a substantial risk of harm is the constitutional injury at issue. And Plaintiffs have plainly alleged that—due to Defendant's lockdown policy—they were so exposed.

### B.    Plaintiffs Have Stated Violations of Substantive and Procedural Due Process

Defendant's decision to impose a generalized, indefinite lockdown—accompanied by punitive restrictions—violates Plaintiffs' Fourteenth Amendment rights to due process. When a jail imposes restrictive conditions like those under the current lockdown, some form of process is due. And even the most permissive due process requirements mandate some degree of individualized consideration when imposing restrictive conditions like those at issue here. By imposing the lockdown on all prisoners in a blanket manner, Defendant violates their rights to procedural due process. And with respect to the Pretrial Class, Defendant's lockdown restrictions violate substantive due process as well. *See Williamson v. Stirling*, 912 F.3d 154, 175 (4th Cir. 2018) (explaining that "the treatment of a pretrial detainee can be so disproportionate, gratuitous, or arbitrary that it becomes a categorically prohibited punishment that will sustain a substantive due process claim"). Plaintiffs have sufficiently pled each of these claims.

### 1.    Pretrial Plaintiffs Have Pled Substantive Due Process Violations

The Fourteenth Amendment bars the punishment of pretrial detainees without due process of law. *Williamson*, 912 F.3d at 173 (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). To state a substantive due process claim based on impermissible punishment, a pretrial detainee must establish "that the challenged conditions were either '(1) imposed with an express intent to punish or (2) not reasonably related to a legitimate nonpunitive government objective, in which case an intent to punish may be inferred.'" *Id.* at 178 (quoting *Slade v. Hampton Roads Reg. Jail*, 407 F.3d 243, 251 (2005). Here, although the lockdown is not expressly punitive, Plaintiffs' allegations are

more than sufficient to demonstrate that the lockdown is not reasonably related to a legitimate, non-punitive government objective.

> a.    The Lockdown Conditions are Excessive, and Therefore Punitive

Where—as here—there is no "explicit intention" to punish a pretrial detainee, a court must "ascertain the relationship between the actions taken against the detainee and the custodian's supporting rationale." *Williamson*, 912 F.3d at 173. That inquiry turns on two factors: whether the restrictions "may validly be attributed to an alternative, nonpunitive rationale, and whether they appear "'excessive in relation to the alternative purpose assigned.'" *Id.* (quotations omitted).

Defendant contends—without explanation—that the Jail's lockdown conditions cannot be punitive because they are "'reasonably related to a legitimate non-punitive governmental objective,' i.e. preventing the spread of COVID-19." Memo. 25 (quotations omitted). However, a court may not "uncritical[ly] accept[]" the Jail's justification for the restriction. *Williamson*, 912 F.3d at 178 (finding reversible error where the court "accepted defendants' asserted purpose" for imposing solitary confinement without the proper analysis); *see Tate v. Parks*, 791 F. App'x 387, 390 (4th Cir. 2019) (per curiam) ("[A] court may not simply accept the defendant's justification for placing a detainee in administrative segregation . . . .").

Instead, courts must "meaningfully consider where the conditions of confinement were 'reasonably related' to the stated objective, or whether they were 'excessive' in relation thereto." *Williamson*, 912 F.3d at 178 (quoting *Bell v. Wolfish*, 441 U.S. at 537-39); *see Tate*, 791 F. App'x at 390 (same). Thus, even a condition that is *effective* in achieving a valid non-punitive purpose may still be deemed punitive if it is an excessive means of doing so.[30] This analysis applies not

---

[30] As the U.S. Supreme Court explained in *Bell*: "[L]oading a detainee with chains and shackles and throwing him in a dungeon may ensure his presence at trial and preserve the security of the institution. But it would be difficult to conceive of a situation where conditions so harsh, employed to achieve objectives that could be accomplished in so many alternative and less harsh methods,

only to the decision to impose the restriction itself, but "more broadly to all the conditions and restrictions thereto." *Tate*, 791 F. App'x at 390; *see Williamson*, 912 F.3d at 180.

The Jail's preemptive, indefinite lockdown is excessive in relation to its sole purpose: preventing the spread of COVID-19.[31] The CDC and public health experts do not recommend generalized lockdowns, and Defendant has numerous alternative and far less restrictive means to achieve social distancing and prevent COVID-19's spread. *See supra* at 17 (citing Plaintiffs' allegations). Opting for harsh lockdown restrictions over less-restrictive alternatives is "excessive in relation to" the lockdown's purpose. *Williamson*, 912 F.3d at 173.[32] Moreover, the generalized lockdown is also counter-productive in relation to its purpose because, in several ways, it facilitates the spread of COVID-19. FAC ¶¶ 140-47.

Even if the lockdown were an appropriate response to the pandemic, Defendant makes no effort to justify the lockdown's punitive conditions, including (for example) lack of mental health treatment, reading material or other entertainment during prisoners' around-the-clock time in their cells, and the inability to access the law library. *See supra* at 17. *See Robles*, 302 F.3d at 269 (finding conditions punitive where they were "entirely unrelated" to a legitimate purpose).

Further, the Jail does not tailor the lockdown (or the restrictions attendant to it) to apply only as necessary to prevent COVID-19 infection. For example, the lockdown's imposition does

---

would not support a conclusion that the purpose for which they were imposed was to punish." 441 U.S. at 539 n. 20.

[31] *See* Memo at 25 (stating this purpose); FAC ¶ 132-147 (describing the Jail's use of the lockdown as its containment method).

[32] *See Bell*, 441 U.S. at 539 n. 20 (reasoning that the imposition of harsh conditions "to achieve objectives that could be accomplished in so many alternative and less harsh methods" would almost certainly be deemed punitive); *Robles v. Prince George's Co.*, 302 F.3d 262, 269 (4th Cir. 2002) (finding that conditions of confinement amounted to punishment where they were "hardly necessary" to achieve their purpose).

not turn on whether the particular detainee has been exposed to COVID-19, whether the detainee is still likely to be contagious, or whether the detainee's particular mental health vulnerabilities would render the lockdown restrictions unduly harmful. FAC ¶ 238. And—short of the pandemic's end—the Jail has no plan to adjust lockdown restrictions based on changing circumstances, including the lockdown's effects on detainees' mental health. FAC ¶¶ 204, 237. Indeed, it has persisted despite detainees' mounting mental health symptoms. *Id.* ¶ 213 (alleging that, as a result of the lockdown, many detainees "are increasingly anxious, depressed, and suicidal."). This failure to tailor the lockdown restrictions to detainees' particular circumstances—including the lockdown's mounting mental health effects—further demonstrates that the policy is excessive, and therefore punitive.[33]

> ### b.    *Defendant's Arguments Fail*

Defendant does not meaningfully address the merits of Plaintiffs' substantive due process claim, other than claiming that purpose is to "prevent[] the spread of COVID-19." Memo. 25.[34] That statement is insufficient, given that Plaintiff's detailed allegations identify a significant disconnect between their proposed rationale and the conditions imposed. *See Williamson*, 912 F.3d at 178 (stating that courts may not simply "accept[] defendant['s] asserted purpose").

Defendant also notes (without analysis) that "courts consistently find that conditions of confinement much more onerous than the Facility's lockdown comfort with substantive due

---

[33] *See Williamson*, (reasoning that, where a detainee's "solitary confinement conditions remained unchanged, despite demonstrable differences in his circumstances," including the detainee's declining mental health, this "undermine[d] the claim" that the continuation of those conditions was "'reasonably' related to some supporting rationale") (quotations omitted).

[34] Defendant also makes several arguments that would apply to a substantive claim brought by post-conviction prisoners. *See* Memo. 25-26. However, Plaintiffs do not bring such a claim. To the extent these arguments are relevant to the Post-Conviction Class's procedural due process claim, Plaintiffs address them in that section below.

process." Memo. 26 (citing three cases). But the cited cases are inapposite; all of them involve post-conviction prisoners, whose due process claims are assessed under more stringent standards than pretrial detainees. Indeed, in all three cases, the prisoner's claims failed based on a requirement that does not apply to pre-trial detainees at all.[35] And one of the cases addresses only procedural (and not substantive) due process.[36] Accordingly, these cases have no bearing on Plaintiffs' substantive due process claim.

### 2.    Pretrial Plaintiffs Have Pled Procedural Due Process Violations

To state a claim for a violation of procedural due process, a pretrial detainee must establish both that the Jail's lockdown conditions "implicate[] a liberty interest triggering due process requirements," and that Plaintiffs are being denied the process due. *Williamson v. Stirling*, 912 F.3d 154, 181 (4th Cir. 2018) (quotations omitted). Defendant does not appear to dispute that Plaintiffs have pled these elements. Regardless, Plaintiffs briefly review them here.

Both the nature of a liberty interest and the level of process due vary based on whether the restriction at issue was imposed for disciplinary or administrative purposes. *Id.* However, under both frameworks, Plaintiffs have a liberty interest in avoiding restrictive lockdown conditions like those at issue here.[37] Both frameworks also entitle each pretrial detainee to some form of

---

[35] *See Beverati*, 120 F.3d 500, 502-04 (4th Cir. 1997) (rejecting claim because the challenged conditions were not "atypical and significant"); *Freeland v. Ballard*, No. 2:11-CV-00443, 2011 WL 7394619, at *3 (S.D.W. Va. Aug. 18, 2011), *report and recommendation adopted*, No. 2:11-CV-00443, 2012 WL 523707 (S.D.W. Va. Feb. 16, 2012) (same); *Gatewood v. Juknelis*, No. CV ELH-16-1644, 2017 WL 1491361, at *8 (D. Md. Apr. 26, 2017) (same); *see also Williamson*, 912 F.3d at 184 (noting that pretrial detainees pursuing due process claims need not satisfy the "atypical and significant" requirement).

[36] *See Freeland*, No. 2:11-CV-00443, 2011 WL 7394619, at *3.

[37] Disciplinary restrictions always implicate liberty interests because pretrial detainees retain a liberty interest in freedom from punishment. *Id.* at 181. With respect to administrative restrictions, the Fourth Circuit has held that pretrial detainees also have a liberty interest in avoiding administrative segregation or solitary confinement conditions, even when imposed for administrative purposes. *See id.* at 182-86; *accord Tate*, 791 Fed. App'x at 390 ("Jail officials may

---

individualized review regarding whether the restrictive conditions are appropriate for him. If the restriction is disciplinary, a pretrial detainee is, at minimum, "entitled to notice, a hearing (which may involve witnesses and documentary evidence), and an explanation of the resulting decision." *Id*. When restrictive confinement conditions are imposed for administrative reasons, less stringent protections apply: a pretrial detainee is entitled to notice, an opportunity to present his views,[38] and a periodic review of his detention. *Id.* at 183. These "periodic reviews must be meaningful enough to take into account the 'facts relating to [the] particular prisoner.'" *Id.* (quotations omitted). In addition, the procedures provided with respect to an administrative restriction must also satisfy the interest-balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Williamson*, 912 F.3d at 177.

Plaintiffs allege in detail that—with respect to the generalized lockdown—they are afforded no procedural protections at all.[39] Thus, the Jail fails to satisfy procedural due process requirements regardless of which level of protections apply.[40]

---

impose nonpunitive restrictions on a pretrial detainee for disciplinary or administrative reasons, but, as these restrictions implicate a detainee's liberty interests, he is entitled to certain procedural protections.").

[38] The detainee's "opportunity to present his views can be provided after the detention begins, but must take place 'within a reasonable time.'" *Williamson*, 912 F.3d at 183 (quoting *Hewitt*, 459 U.S. at 477).

[39] *See* FAC ¶ 238 (alleging that the Jail has "no plan to, as the CDC Guidance and other public health experts recommend, limit lockdown to prisoners who require quarantine and to the time-period necessary for that quarantine to be effective (the CDC recommends 14 days)); ("The Jail lacks any process for determining whether a particular detainee must be placed in these conditions or when these conditions . . . may end."); *see also id.* ¶¶ 201; ¶¶ 234-236; *id.* ¶ 237; *id.* ¶ 276.

[40] *See* FAC ¶¶ 201, 234-36, 238, 276. In its procedural due process argument, Defendant does not contend that the Jail offers adequate procedural protections under either standard. *See* Memo. 26-28. Therefore, any such argument is now waived. However, as part of its argument on substantive due process, Defendant asserts: "Director McDonough and the other members of the Facility's leadership continue to review the necessity for the lockdown restrictions, and the lockdown will remain in place only as necessary during the pandemic." Memo. 25. Defendant's only support for this statement are three allegations in the Amended Complaint, none of which support Defendant's

Because Plaintiffs have stated procedural due process claims regardless of whether the generalized lockdown is deemed "disciplinary" or "administrative," this Court need not decide that issue now. However, whether a restriction is deemed "disciplinary" or "administrative" turns on the same analysis as whether a restriction is considered punitive in the substantive due process context.[41] Thus, for the same reasons the Jail's lockdown conditions constitute punishment, described above, *supra* at 20-22, they are also disciplinary for procedural due process purposes, and thus trigger the heightened protections that entails.[42]

### 3.    Post-Conviction Plaintiffs Have Pled Procedural Due Process Violations

To state a procedural due process claim based on confinement conditions, post-conviction prisoners—like pretrial detainees—must both identify a protected liberty interest and "demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, (4th Cir. 2015). To establish a protected liberty interest, a post-conviction prisoner must satisfy additional requirements that do not apply to detainees who are held pre-trial. As an initial matter, the prisoner must "establish that an interest in avoiding onerous or restrictive confinement conditions 'arise[s]

---

assertion. *Id.* at 25-26 (citing FAC ¶¶ 191, 136, 247). However, even if Defendant's statement were true, it fails establish that even the minimum due process protections that may apply are being provided.

[41] *See Williamson*, 912 F.3d at 182, 186 ("[The framework from] *Bell* established the relevant inquiry for identifying 'punitive' actions that contravene the substantive due process rights of pretrial detainees. It also guides the distinction between 'disciplinary' and 'administrative' actions taken against such detainees for purposes of procedural due process."); *accord Tate*, 791 Fed. App'x at 391(basing procedural due process analysis of whether restriction was disciplinary on its earlier substantive due process analysis of whether it was punitive).

[42] *Williamson*, 912 F.3d at 182 (basing procedural due process analysis of whether restriction was disciplinary on its earlier substantive due process analysis of whether it was punitive); *Tate*, 791 Fed. App'x at 391 (same); *see also Williamson*, 912 F.3d at 186 n. 20 *see also id.* n. 20 ("[W]here — as here — the allegations underlying the due process claims are "coextensive," a determination that a restriction is 'punitive' may also confirm that the restriction was 'disciplinary.')

from state policies or regulations.'" *Incumaa v. Stirling*, 791 F.3d 517, 527 (4th Cir. 2015), *as amended* July 7, 2015.

Here, this requirement is easily satisfied: Plaintiffs have alleged that the Jail's Inmate Handbook sets forth a number of procedural protections that normally apply to restrictive confinement conditions (but which have not been applied during the current lockdown), including requirements for periodic review and an opportunity for appeal (protections that are not present here) FAC ¶¶ 234-36, 274; *see Incumaa*, 791 F.3d at 527 (find this requirement met where "Department policy . . . mandate[d] review of Appellant's security detention every 30 days").

Whether conditions are "atypical and significant" is a "'fact-specific' comparative exercise." *Id.* (quoting *Beverati*, 120 F. 3d 500, 502 (4th Cir. 1997)), where the court must first "determine what the normative 'baseline' is . . . for *this particular inmate*" and then "determine[s] whether the prison conditions impose atypical and substantial hardship in relation to that norm." *Id.* (quoting *Prieto*, 780 F.3d at 253).

Defendant contends (with no further argument or legal authority) that "the lockdown measures do not constitute an 'atypical and significant' hardship because *all* of the detainees remain[] subject to the lockdown measures." Doc. 28-1 at 25.[43] This misunderstands how courts identify the proper baseline. The question is not whether *all* detainees suffer the hardship, but whether they are experiencing a hardship as compared to the "'ordinary incidents of prison life' for that prisoner," *i.e.*, the *normal* experience of a post-conviction prisoner at the jail. *Prieto*, 780 F.3d at 253 (quoting *Sandin*, 515 U.S. at 484); *Incumaa*, 791 F.3d at 528 ("[A] general population

---

[43] Although Defendant references the "atypical and significant" hardship standard in its argument on procedural due process, Memo. 27, Defendant does not argue in that section that this standard has not been met. However, since Defendant does take that position in its substantive due process argument (to which it is not relevant), Plaintiffs address it here.

inmate's "confinement expectations radiate from the conditions that inmates in the general population *normally experience*.") (emphasis added).

Using that baseline, the court should then consider whether the lockdown's conditions are "atypical and significant" using three factors: "(1) the magnitude of confinement restrictions; (2) whether the segregation is for an indefinite period; and (3) whether assignment to administrative segregation ha[s] any collateral consequences on the inmate's sentence." *Incumaa*, 791 F.3d at 530. As to the first factor, the lockdown conditions are severe. As Plaintiffs allege in detail, the lockdown has drastically altered prisoners' experience at the Jail. FAC ¶¶ 133-135, 143, 147, 187-210.[44] Second, Plaintiffs have alleged that the lockdown's duration is indefinite. *See id.* ¶¶ 187, 211, 237 & n. 107. And although the lockdown includes no formal collateral consequences on an inmate's sentence, Plaintiffs allege that it may have the effect of prolonging it because (for example) "detainees' reduced access to their attorneys makes it more challeng[ing] to press their cases in ways that could lead to release." FAC ¶ 216. Regardless, courts have found liberty interests where the third factor is not implicated. *See Wilkerson v. Goodwin*, 774 F.3d 845 (2014) (finding a liberty interest where restrictive conditions had no effect on parole eligibility); *Incumaa*, 791 F.3d at 532 (same). Thus, Plaintiffs' allegations support a plausible inference that the post-conviction Named Plaintiff and putative class members have a liberty interest in avoiding the lockdown conditions.

To determine whether procedural protections are sufficient to protect a prisoner's liberty interest, courts must consult the three factor test from *Matthews v. Eldridge*, 424 U.S. 319, 338

---

[44] Moreover, whereas the Jail's usual policy, as stated in the Inmate Handbook, allows inmates to appeal their placement of lockdown and requires periodic review of restrictive custody (every seven days for the first two months and every thirty days thereafter), *id.* ¶ 235, prisoners have remained on lockdown without any such review since April, *id.* ¶ 187, 234, 274.

(1976). *See Wilkinson*, 545 U.S. at 224. Plaintiffs have established that the procedural protections offered by the Jail are not sufficient to protect post-conviction detainees' liberty interests under *Matthews* because Plaintiffs have alleged that the Jail offers no procedural protections at all.

4.    <u>Defendant's Procedural Arguments Regarding Plaintiffs' Substantive and<br>Procedural Due Process Claims Fail</u>

Defendant raises several meritless procedural arguments in response to Plaintiffs' substantive and procedural due process claims. First, Defendant contends that Plaintiffs' claims must fail because the Amended Complaint's lockdown allegations "do not include any allegations regarding the *Plaintiffs.*" Memo. 24. Thus, Defendant argues, "Plaintiffs erroneously invite the Court to speculate that Plaintiffs suffered a violation of their [rights]." *Id.* at 35; *see also id.* at 37 (similar).

This argument is erroneous. Plaintiffs alleged that the Jail's lockdown is "universal," and applies to "all prisoners." FAC ¶ 132. This necessarily includes Plaintiffs.[45] Thus, Plaintiffs' detailed allegations about the lockdown describe a policy to which all prisoners are subject. Further, in the Amended Complaint and the declarations incorporated by reference, the Plaintiffs *do* allege that they are subject to the lockdown. *See supra* at 18.

Defendant also summarily argues (without explanation) that Plaintiffs have not sufficiently alleged that the lockdown policy is attributable to Defendant. *See* Memo. 25 (suggesting that Plaintiffs have not shown that "Director McDonough is liable [for violations of Plaintiffs' substantive due process rights]"); *id.* at 26 (stating that Plaintiffs "do not allege any . . . causal link to Director McDonough" for procedural due process violations). This argument is also meritless. Defendant McDonough is not sued as an individual—she is sued in her official capacity as Director of the Prince George's County Department of Corrections. FAC ¶ 22. "[O]fficial capacity suits"

---

[45] As described above, the fact that some Plaintiffs have been released since the initial Complaint was filed does not alter this analysis.

are "another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *see also* FAC ¶ 1 n. 3 ("Since Defendant McDonough is being sued in her official capacity, 'Defendant McDonough' and 'the Jail' are used interchangeably . . . ."). And under settled doctrine, Defendant McDonough, *in her official capacity*, is liable for the implementation of any "policy statement[s], ordinance[s], regulation[s], or decision[s] adopted and promulgated by [the governmental entity's] officers," as well as for the entity's informal but pervasive "customs." *Id.* Plaintiffs allege both that the lockdown is a "policy" and that it applies to all prisons at the Jail. *See, e.g.*, FAC ¶¶ 132-33. As such, Defendant McDonough, in her official capacity, is responsible for it.

## III.    THIS COURT SHOULD DENY DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' ORIGINAL CLAIMS

Plaintiffs' have sufficiently stated a claim for overdetention under the Fourteenth Amendment (Count II) and a claim for habeas relief (Count III). Both claims were pled in Plaintiffs' original Complaint, which Defendant answered, rather than moving to dismiss. *See* Answer, Doc. 70. Neither claim should be dismissed now.

### A.    Plaintiffs Stated Fourteenth Amendment Overdetention Claims

Plaintiffs allege that Defendant maintains an unlawful policy of detaining prisoners who are legally entitled to release, solely because those prisoners are COVID-positive. FAC ¶¶ 183-86, 258-259. Defendant does not challenge the merits of this claim. Therefore, Plaintiffs do not address them here. Instead, Defendant argues that Plaintiffs have failed to allege "that Director McDonough instituted any policy of overdetention," and thus have not alleged liability under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Memo 23.[46]

---

[46] *Monell* liability can stem from formal rules or understandings, affirmative decisions of policy making officials, and informal, but settled customs and practices. *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999).

- 29 -

Plaintiffs sufficiently pld that the Jail had an official overdetention policy. "The Fourth Circuit has made clear that a *Monell* plaintiff need not 'plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom and causation.'" *Garcia v. Montgomery County*, No. JFM-12-3592, 2013 WL 4539394, at *5 (D. Md. Aug. 23, 2013) (quoting *Jordan by Jordan v. Jackson*, 15 F.3d 333, 339-40 (4th Cir. 1994)). "Although boilerplate allegations will not suffice, at the motion to dismiss stage, courts should not expect the plaintiff to possess a rich set of facts concerning the allegedly unconstitutional policy and the responsible policymakers." *Estate of Bryant v. Baltimore Police Dep't*, No. CV ELH-19-384, 2020 WL 673571, at *36 (D. Md. Feb. 10, 2020). Thus, allegations that a policy exists—accompanied by even one specific example—may suffice. *See, e.g.*, *Garcia*, No. JFM-12-3592, 2013 WL 4539394, at *5 (D. Md. Aug. 23, 2013) (finding that plaintiff adequately pled *Monell* liability where he provided only one example of misconduct and stated that it occurred pursuant to official policy).[47]

Plaintiffs' allegations satisfy these requirements. Plaintiffs specifically allege that Defendant adopted overdetention as a policy,[48] that "multiple jail officials" knew about and implemented the policy,[49] and Plaintiffs provide two detailed and specific examples of the policy's

---

[47] *See also Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 403 (4th Cir. 2014) ("Although prevailing on the merits of a *Monell* claim is difficult, simply alleging such a claim is by definition easier. . . . The recitation of facts need not be particularly detained and the chances of success need not be particularly high.").

[48] Plaintiffs describe the overdetention of COVID-positive prisoners as a policy adopted by the Jail to prevent the spread of the virus into the community. *See* FAC ¶¶ 183, 258; *see also* Ex. 29, Glenn Decl. (Doc. 2-1 at 142) ¶ 24 ("It has also become clear that the jail has adopted a policy of illegally detaining people for no other reason than that they have tested positive for the Coronavirus.").

[49] A public defender's declaration, incorporated into the Amended Complaint by reference, FAC ¶ 241, states that both the public defender and the head of the public defender's office discussed

implementation.[50] At the pleading stage, when all reasonable inferences must be drawn in Plaintiffs' favor, these allegations are more than sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, courts in this district have found *Monell* liability adequately pled based on similar allegations.[51]

Defendant also argues that this claim is deficient—and that Plaintiffs lack standing to raise it—because "Plaintiffs do not allege that *they* suffered any constitutional deprivation from over-detention." Memo. 13-14. Defendant misunderstands the nature of claims for injunctive relief. A plaintiff has standing not only when he has suffered an injury, but also when he "he is in immediate danger of sustaining some direct injury as the result of the challenged official conduct." *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). Plaintiffs alleged that they face immediate danger of unlawful detention because all of them are both "actively seeking to be legally entitled to release" and "at immediate risk of contracting COVID-19." FAC ¶ 260. Thus, Defendant's argument fails.

---

the overdetention of a COVID-positive prisoner with "multiple officials at the jail," but that "the jail refused to release [him]." Ex. 29, Glenn Decl. (Doc. 2-1 at 142) ¶ 24.

[50] These examples are described in three declarations incorporated by reference, FAC ¶ 241, one from the public defender representing the overdetained individuals, and two from those individuals themselves. *See* Ex. 9, Decl. 9 (Doc. 2-1 at 41) ¶ 23; Ex. 11, Decl. 11 (Doc. 2-1 at 58-59) ¶¶ 5, 22; Ex. 29, Glenn Decl. (Doc. 2-1 at 142) ¶¶ 24-25.

[51] *See, e.g.*, *Burgess v. Baltimore Police Dep't*, No. RDP-15-0834, 2017 WL 4947004, at *12 (D. Md. 2017) (plaintiff's allegations concerning "three specific examples of *Brady* violations by BPD in 1981, 1988, and 1995" were sufficient to plead a plausible *Brady* claim); *Garcia*, No. JFM-12-3592, 2013 WL 4539394, at *5 (*Monell* liability adequately pled based on one example); *see also Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 403 (4th Cir. 2014) (finding that *Monell* claim was adequately pled where the plaintiff alleged the existence of a policy and stated that examples existed in an unspecified number of "[r]eported and unreported cases" and "a number of motions"); *cf. Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999) (explaining that "[a] governmental unit may create an official policy by making a single decision regarding a course of action in response to particular circumstances").

### B.    Plaintiffs' Habeas Claim is Cognizable Under § 2241

Plaintiffs in the Medically Vulnerable Subclass—who are all pretrial detainees—seek release from the Jail under 28 U.S.C. § 2241. Plaintiffs allege that they are entitled to this relief because the Jail's conditions are unacceptably dangerous and cannot be remedied in time to protect their lives. *See* FAC ¶¶ 262-65. Plaintiffs allege that in these circumstances, the only way for the subclass members to avoid unconstitutional harm is to "seek[] immediate release or a speedier release from confinement—the heart of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475 (1973); *see* FAC ¶ 265 ("[T]here are presently no options available to mitigate th[e] risk of COVID-19 at the Jail] quickly enough to protect [the Medically Vulnerable Subclass members] other than immediate release from custody.").

This Court previously held that Plaintiffs' claims for relief under § 2241 are subject to the restrictions of the Prison Litigation Reform Act (PLRA). *See Seth*, No. 20-cv-1028, 2020 WL 2571168, at *11. Relying on this holding, Defendant now argues that Plaintiffs' claim is not cognizable under § 2241 because the Medically Vulnerable Subclass members' request for release turns on conditions of confinement.

The U.S. Supreme Court has left open the question whether a petitioner may bring a habeas condition based on his conditions of confinement. *See Preiser*, 411 U.S. at 499 (stating, while explaining the traditional differences between civil rights actions and habeas cases, that "[t]his is not to say that habeas corpus may not also be available to challenge such prison conditions"). And in recent opinions, courts are divided on this issue.[52] The Fourth Circuit has, in several non-binding

---

[52] *Compare, e.g. Wilson v. Williams*, 961 F.3d 829, 837 (6th Cir. 2020) (concluding, in case about COVID-19, "that petitioners' claims are properly brought under § 2241 because they challenge the fact or extent of their confinement by seeking release from custody")*, with Toure v. Hott*, No. 1:20-CV-395, 2020 WL 2092639, at *5 (E.D. Va. Apr. 29, 2020) ("[Plaintiffs'] challenge to the constitutional sufficiency of their confinement, even when paired with a request for immediate release, is a challenge to the conditions of their confinement.").

unpublished opinions, declined to allow certain habeas claims based on confinement conditions to proceed. *See* Memo. 15 (citing cases). However, in *Coreas v. Bounds*, a court in this district considering a similar claim for release based on a detention facility's COVID-19 conditions found that these cases were "clearly distinguishable," and concluded that a claim "seeking release because of unconstitutional conditions or treatment is cognizable under § 2241. No. TDC-20-0780, 2020 WL 1663133, at *6-7 (D. Md. Apr. 3, 2020). This precise issue is now fully briefed and pending on appeal in the Fourth Circuit. *See Toure v. Holt*, No. 20-6695 (filed May 13, 2020).

As an analytical matter, Plaintiffs submit that their habeas claim is cognizable under § 2241 because the remedy sought is release—not any improvement in conditions. *Accord Wilson v. Williams*, 961 F.3d 829, 837-38 (6th Cir. 2020) (prisoners' habeas claim based on the Jail's dangerous conditions with respect to COVID-19 was cognizable under § 2241 because the remedy sought was release, not improved conditions). By framing their claim in this way, Plaintiffs face formidable hurdles. For instance, they must ultimately prove, as a factual matter, that there is *no* set of conditions that could sufficiently mitigate the risk to the Medically Vulnerable Subclass members in time to prevent irreparable injury and that, therefore, the only option is release from confinement.[53] Moreover, as this Court has concluded, Plaintiffs are also constrained by the PLRA. *Seth*, No. 20-cv-1028, 2020 WL 2571168, at *11. However, neither of these hurdles signifies that Plaintiffs' claim is not *cognizable* under § 2241. Therefore, dismissal is inappropriate.

## IV.    PLAINTIFFS PLEAD CLAIMS FOR INJUNCTIVE RELIEF

If the allegations in Plaintiffs' Amended Complaint are demonstrated at the appropriate phase of this litigation, Plaintiffs would be entitled to the prospective injunctive relief that they seek.  The PLRA expressly provides for "[p]rospective relief in any civil action with respect to

---

[53] Defendant does not argue that Plaintiffs have not sufficiently pled facts to plausibly support this inference at the pleading stage.

prison conditions[.]"  18 U.S.C. § 3626(a)(1).  The PLRA also expressly provides for a process

for prisoner release "[i]n any civil action with respect to prison conditions" when certain

conditions are satisfied.  *Id.* § 3626(a)(3).  Accordingly, the statute itself belies any claim by

Defendant that prospective injunctive relief and release are unavailable under the PLRA.

Defendant requests that this Court determine now—while the parties are in the middle of

fact discovery—whether the relief Plaintiffs seek meets the PLRA's need-narrowness-

intrusiveness requirements or require the institution of a three-judge panel for the purpose of

determining if release is necessary.  Memo. 30-33.  Defendant's request is premature.  What

prospective relief is proper, including whether it is necessary to institute a three-judge panel to

determine the propriety of release, is not a determination amenable to resolution on a motion to

dismiss.  *See Morales Feliciano v. Rossello Gonzalez*, 13 F. Supp. 2d 151, 212-213 (D.P.R.

1998) (entering injunctive relief "to protect the members of the plaintiff class from cruel and

unusual punishment through constitutionally unacceptable health care services" after a hearing).

None of the cases Defendant relies on are to the contrary.  At most, the cases cited by

Defendant, many of which concern preliminary stages of litigation, hold that the facts plaintiffs

presented in *those cases* did not warrant the requested injunctive relief.[54]  Whether to impose

---

[54] *See, e.g.*, *Scott v. Siddiqui*, Case No. 17-cv-1127-JPG-SCW, 2018 WL 4403310, at *3-*4 (S.D. Ill. Apr. 5, 2018) (finding no grounds for the preliminary injunctive relief requested based on the record before the court); *Hines v. Anderson*, 547 F.3d 912, 921-922 (8th Cir. 2008) (affirming the district court's finding that based on facts before the court, the decree "was not narrowly drawn to address a particular medical problem that existed at the time"); *Alvarez v. Larose*, Case No. 20-cv-00782-DMS, 2020 WL 2315807, *3-*4 (S.D. Cal. May 9, 2020) (holding that Plaintiffs had not on the record before the Court demonstrated they were entitled to a preliminary injunction granting release); *Money v. Pritzker*, Case No. 20-cv-209, 2020 WL 1820660, at *14 (N.D. Ill. Apr. 10, 2020) (holding that Plaintiffs were not entitled to release at the temporary restraining order stage without an initial order for less intrusive relief and the implementation of a three-judge court). The Court's holding in *Coleman v. Newsom* is inapposite. Case No. 2:90-cv-0520 KJM DB P, 2020 WL 1675775, at *6 (E.D. Cal. Apr. 4, 2020) (holding Plaintiffs were not entitled to modify the release order previously entered by the Court in 2009 in response to systemic, non-COVID-

injunctive relief and what relief to impose is a fact-intensive inquiry.  Defendant has not shown

that Plaintiffs do not have a legal right to the requested injunctive relief should the sufficient

facts be established at a later stage of this litigation.  Accordingly, her motion to dismiss

Plaintiff's requested injunctive relief should be denied.[55]

## CONCLUSION

For the foregoing reasons, Plaintiffs' respectfully request that this Honorable Court deny

Defendant's motion to dismiss or, alternatively, motion for summary judgment.


Dated:
August 7, 2020

---

19-related overcrowding issues).  Indeed, *Coleman* undermines Defendant's assertions as *Coleman* demonstrates that in the appropriate circumstances a prisoner release order by a three-judge court is appropriate and necessary.  *Id.* at *2.

[55] Defendant's claim that Plaintiffs' requests for injunctive relief are both too specific for the PLRA and too broad for FRCP 65 is meritless. Memo. 32 & n.13.  Injunctive relief, should this Court find it necessary to impose it, must be tailored the facts as demonstrated at an appropriate stage of this litigation.  *See, e.g.*, *Rondeau v. Mosinee Paper Co.*, 422 U.S. 49, 62 (1975) (noting that injunctions "permit the court to mould each decree to the necessities of the particular case"); *SEC v. Hillsborough Inv. Corp.*, 176 F. Supp. 789, 790 (D.N.H. 1959) (similar).  Of course, whatever injunctive relief this Court enters must be sufficiently specific so as to not run afoul of Rule 65's prescriptions.  Fed. R. Civ. P. 65(d)(1)(B)-(C).  However, that is not a basis for dismissal of Plaintiffs' requested injunctive relief.

Respectfully submitted,


By:    /s/ Katherine Chamblee-Ryan
       Edward Williams (Bar No. 20944)
       Cadene Russell Brooks (*pro hac vice*)
       WILMER CUTLER PICKERING
       HALE AND DORR LLP
       1875 Pennsylvania Avenue NW
       Washington, DC 20006
       ed.williams@wilmerhale.com
       Phone: (202) 663-6487

       Elizabeth Rossi (Bar No. 19616)
       Katherine Chamblee-Ryan (*pro hac vice*)
       Olevia Boykin (*pro hac vice*)
       Ryan Downer (*pro hac vice*)
       CIVIL RIGHTS CORPS
       1601 Connecticut Ave. NW, Suite 800
       Washington, DC 20009
       katie@civilrightscorps.org
       Phone: (610) 931-7715