# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **KEITH SETH, *et al.*,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 8:20-cv-01028-PX** |
| **MARY LOU MCDONOUGH,** | ) | |
| In her official capacity as Director of | ) | |
| the Prince George's County Department | ) | |
| of Corrections, | ) | |
| | ) | |
| Defendant. | ) | |

## DIRECTOR MARY LOU MCDONOUGH'S REPLY MEMORANDUM IN FURTHER SUPPORT OF HER MOTION TO DISMISS THE AMENDED COMPLAINT OR, ALTERNATIVELY, MOTION FOR SUMMARY JUDGMENT

Pursuant to Rules 12(b)(1), 12(b)(6), and 56 of the Federal Rules of Civil Procedure, Defendant MARY LOU MCDONOUGH ("Director McDonough"), in her official capacity as Director of the Prince George's County Department of Corrections ("PGCDOC"), hereby submits this Reply Memorandum in further Support of her Motion to Dismiss the Amended Complaint or, Alternatively, Motion for Summary Judgment.

### INTRODUCTION

The Amended Complaint falls far of stating a claim against Director McDonough for violating Plaintiffs' rights in light of the emergency created by the

COVID-19 pandemic.  Plaintiffs must do more than allege that it is *possible* they *may* suffer violations of their rights.  Generalized allegations of conditions at the Facility[1]—allegations disproven by the record before the Court—fall far short of entitling Plaintiffs to any relief from Director McDonough.  Furthermore, Plaintiffs fail to create a genuine issue of fact regarding their compliance with the PLRA's exhaustion requirement.  Director McDonough's Motion to Dismiss the Amended Complaint or, Alternatively, Motion for Summary Judgment (Doc. Nos. 128, 128-1, the "<u>Motion</u>") is due to be granted in full.

The Motion is due to be granted and Plaintiffs' response brief in opposition to the Motion (Doc. No. 135, the "<u>Response</u>") should be over-ruled for the following seven (7) reasons:

(1)    The current status of the Released Plaintiffs moots their claims;

(2)    PGCDOC's grievance process was not "unavailable" to Plaintiffs;

(3)    The Amended Complaint fails to state an over-detention claim;

(4)    Plaintiffs' habeas petition fails to state a claim in light of the "entrenched" view of the Fourth Circuit;

(5)    The Amended Complaint fails to state a § 1983 claim based on the lockdown measures;

---

[1] Unless otherwise indicated, this Reply uses the same definitions for terms as provided in Director McDonough's Motion.  (Doc. No. 128-1).

(6)     The Amended Complaint fails to state a due process claim; and

(7)     The PLRA prohibits Plaintiffs' request for injunctive relief.

Therefore, the Court should grant Director McDonough's Motion and dismiss Plaintiffs' Amended Complaint and the claims asserted in the Amended Complaint.

<u>**ARGUMENT**</u>

## I.     THE CURRENT STATUS OF THE RELEASED PLAINTIFFS MOOTS THEIR CLAIMS.

The Released Plaintiffs' claims are moot because they are no longer in PGCDOC's custody.  Plaintiffs raise two (2) unconvincing arguments in opposition to Director McDonough's Motion.  First, relying on *dicta* in <u>Gerstein v. Pugh</u>, 420 U.S. 103 (1975), Plaintiffs contend that the Released Plaintiffs' claims on behalf of a putative class of pretrial detainees constitute "inherently transitory" claims coming within the "capable of repetition yet evading review" exception to the mootness doctrine.[2]  (Doc. No. 135 at 13).  In *dicta*, the <u>Gerstein</u> court noted that "it is most unlikely that any given [pretrial detainee] could have his constitutional claim decided on appeal before he is either released or convicted," the termination of an individual class representative's claim as moot "does not moot the claims of the

---

[2] This argument does not apply to Plaintiff John Doe No. 2, who was not a pretrial detainee when Plaintiffs initiated this action.  (Doc. No. 120 at ¶ 18).  His claims are due to be dismissed as moot in light of his release from PGCDOC's custody.

unnamed members of the class." 420 U.S. at 110, n. 11.  Second, Plaintiffs assert that the Released Plaintiffs retain a "legal interest" in obtaining class certification based on their pending motion for class certification.  (Doc. No. 135 at 13). Plaintiffs' arguments are unconvincing.

The current circumstances of the Released Plaintiffs are easily distinguishable from the facts in the cases cited by Plaintiffs.  In those cases, *all* of the named plaintiffs' claims had become moot, and the class claims would terminate if the individual plaintiffs' claims were dismissed as moot.[3]  Here, Director McDonough does *not* contend that *all* of the Plaintiffs' claims are moot or that the claims of the putative classes are moot.  In fact, Plaintiffs concede that "[a]t least one Named Plaintiff representative of each class and subclass remain incarcerated at the Jail," and thus "there are sufficient Named Plaintiffs to carry forward claims alleged against [Director McDonough]" even if the Released Plaintiffs' claims are moot.[4] (Doc. No. 135 at 13, n. 8).  Plaintiffs' claims will not evade review because some Plaintiffs will remain to pursue those claims and push for class certification.[5]  "The 'inherently transitory' rationale … address[es] circumstances in which the

---

[3] See Gerstein, 420 U.S. at 110, n. 11; U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 401-07 (1980); Cnty. of Riverside v. McLaughlin, 500 U.S. 44, 52 (1991).

[4] The Court need not decide whether the "capable of repetition, yet evading review" exception to mootness would apply if all of the Plaintiffs' claims became moot because that circumstance is not before the Court.

[5] For the variety of reasons stated in Director McDonough's Motion, all of Plaintiffs' claims are due to be dismissed on grounds other than mootness.

challenged conduct was effectively unreviewable, because *no plaintiff possessed a personal stake in the suit long enough for litigation to run its course*." <u>Genesis Healthcare Corp. v. Symczyk</u>, 569 U.S. 66, 76 (2013) (emphasis added). Thus, the legal reasoning underpinning the cases cited by Plaintiffs simply do not apply here.

Practical considerations also counsel in favor of dismissing the Released Plaintiffs' claims. The Released Plaintiffs do not possess information regarding the current circumstances at the Facility. Thus, any testimony from the Released Plaintiffs will provide little value for the adjudication of the claims and defenses at issue in this action, while discovery related to the Released Plaintiffs will consume significant time and resources. Dismissing the Released Plaintiffs' claims will streamline this action to focus on the most relevant information to provide the Court.

## II. PGCDOC'S GRIEVANCE PROCESS WAS NOT "UNAVAILABLE" TO PLAINTIFFS.

42 U.S.C. §1997e(a) of the Prison Litigation Reform Act ("<u>PLRA</u>") *mandates* that detainees such as Plaintiffs exhaust all administrative remedies prior to bringing a claim with respect to the conditions in a jail. 42 U.S.C. §1997e(a); <u>Ross v. Blake</u>, 136 S. Ct. 1850, 1854-55 (2016). A detainee "must 'complete the administrative review process in accordance with the applicable procedural rules,'" meaning those rules set "by the prison grievance process itself." <u>Jones v. Bock</u>, 549 U.S. 199, 218 (2007) (quoting <u>Woodford v. Ngo</u>, 548 U.S. 81, 88 (2007)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural

rules…." <u>Woodford</u>, 548 U.S. at 91. "[A] court may not excuse a failure to exhaust, even to take [special] circumstances into account." <u>Ross</u>, 136 S. Ct. at 1856. The futility of the grievance process to address a detainee's complaint does not excuse the requirement to exhaust the grievance process prior to bringing suit. <u>Booth v. Churner</u>, 532 U.S. 731, 739-41, n. 6 (2001).

Plaintiffs fail to create a genuine issue of material fact regarding the dismissal of their claims pursuant to the PLRA's exhaustion requirement. Plaintiffs admit that PGCDOC maintains a grievance process to address detainees' concerns related to conditions at the Facility and that they did not exhaust that grievance process prior to initiating this action. (Doc. No. 135 at 10-11). Plaintiffs' argument that the grievance process was "unavailable" falls far short of establishing creating a factual dispute on Plaintiffs' failure to comply with the PLRA's exhaustion requirement.

The PLRA only requires that "the remedies be 'available' *to the prisoner*." <u>Ross</u>, 136 S. Ct. at 1856 (emphasis added). Jail officials may render a grievance process "unavailable" if they "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." <u>Id.</u> at 1860. But determining whether the grievance process was "available" to a plaintiff requires an individualized assessment. <u>Salem v. Mich. Dep't of Corrs.</u>, Case No. 13-cv-14567, 2019 WL 4409709, at *13-15 (E.D. Mich. Sept. 16, 2019) (denying a motion for class certification and setting a hearing to determine whether the grievance process

was "available" to the individual plaintiffs).  A detainee cannot demonstrate that a grievance process is "unavailable" if he does not attempt to comply with that process.  See Napier v. Laurel Cnty., Ky., 636 F.3d 218, 224 (6th Cir. 2011) ("the only way to determine if the process was available, or futile, was to try" to comply with the procedures).  Furthermore, a court's inquiry only considers whether the grievance process was available to the plaintiff *prior to filing the action*, not whether the process subsequently became unavailable.  See generally Berry v. Kerik, 366 F.3d 85, 87 (2d Cir. 2004) (focusing analysis on whether the plaintiff had access to the grievance process prior to filing suit).  PGCDOC unquestionably provided Plaintiffs with an "available" grievance process in light of this law.

In their Response, Plaintiffs do not point to relevant evidence that PGCDOC's grievance process was "unavailable" to Plaintiffs prior to initiating this action.  In contending that PGCDOC's grievance process was "unavailable," the Response cites to statements purportedly from non-plaintiff detainee declarants; a conclusory statement by Dr. Carlos Franco-Paredes; and generalized statements from two (2) Plaintiffs, Mario Burch and David Smith.[6]  (Doc. No. 135 at 11, n. 6).  The non-plaintiff detainees' statements do not create a question of fact regarding the

---

[6] The Response also generally asserts, without elaborating an argument, that PGCDOC's grievance process requires inmates to overcome several hurdles before they may even request a grievance form…." (Doc. No. 135 at 4).  The significance of this assertion remains unclear.  Regardless, a plaintiff must exhaust a grievance process even if it involves "rigid restrictions," Powers v. Clay, No. V-11-051, 2012 WL 6858233, at *6 (S.D. Tex. Nov. 21, 2012), or is not "simple, fast, or effective."  Graham v. Cnty. of Gloucester, Va., 668 F. Supp. 2d 734, 739-40 (E.D. Va. 2009).

availability of the grievance process for Plaintiffs because those statements ***provide no information whatsoever regarding any attempts by Plaintiffs*** to utilize the grievance process.   Furthermore, the non-plaintiff detainees' statements do not support a reasonable *inference* that the grievance process was unavailable to Plaintiffs given the lack of details in the statements.   For example, the non-plaintiff detainees' statements fail to indicate that those detainees followed PGCDOC's grievance procedures, where they were housed at the Facility when they purportedly concluded the grievance process was unavailable, and when they purportedly sought to utilize the grievance procedures.   The non-plaintiff detainees' statements do not create a question of fact regarding the availability of the grievance process to Plaintiffs and are due to be rejected out of hand.

Dr. Franco-Paredes's highly conclusory statement that "[t]here is no existing functioning protocol for inmates to report grievances of recent negative events" also fails to create a genuine factual issue.  (Doc. No. 65-1 at 8).  Dr. Franco-Paredes did not visit the Facility until May 6, 2020, i.e. more than two (2) weeks after Plaintiffs initiated this action.  (Id. at 5).  Thus, the conclusory statement in his report simply does not create an issue of fact for whether Plaintiffs failed to utilize PGCDOC's grievance process due to its unavailability *before* they initiated this action.

Finally, the declarations of Plaintiffs Mario Burch and David Smith fall far short of creating a factual dispute for whether PGCDOC's grievance process was

unavailable to Plaintiffs prior to this action.  With respect to Burch, he does not state that he attempted to engage in the informal grievance process or requested a grievance form to address the alleged conditions about which he complains in this action.  (Burch Declaration, Doc. No. 2-1, at ¶ 14).  Smith only states that he received, but decided not to submit, a grievance form relating to his complaint that "the CO put the [food] trays on the floor."  (Smith Declaration, Doc. No. 2-1, at ¶ 14).  Smith does not state that he ever sought to, and was thwarted from, utilizing the grievance process *with respect to his claims in this action*.[7]  See Jones, 549 U.S. at 219-20 ("All agree that no unexhausted claim may be considered.").  Director McDonough is entitled to summary judgment on Plaintiffs' claims in this action because they failed to exhaust the grievance process required by the PLRA.[8]

## III.   THE AMENDED COMPLAINT FAILS TO STATE AN OVER-DETENTION CLAIM.

The Amended Complaint fails to state an over-detention claim.  First, Plaintiffs fail to adequately allege Monell liability for Director McDonough based

---

[7] Smith's vague statement that "[i]f I try to ask for a grievance I know they are going to turn it against me," (Smith Declaration, Doc. No. 2-1, at ¶ 15), utterly fails to create a question of fact for whether the grievance process was unavailable to him.  See Boyd v. Corr. Corp. of Amer., 380 F.3d 989, 998 (6th Cir. 2004) ("nonspecific allegations of fear" do not excuse a failure to exhaust administrative grievance procedures).

[8] Even if the Court concludes that Burch's and Smith's declarations created a question of fact regarding whether PGCDOC's grievance form was available for *them* (it should not), Director McDonough would still be entitled to summary judgment with respect to the other Plaintiffs' claims.  See Sain v. Collier, Civil Action No. H-18-4412, 2019 WL 4144321, at *12-14 (S.D. Tex. Aug. 30, 2019) (granting summary judgment with respect to some of the named plaintiffs in a putative class action who failed to exhaust the administrative grievance process).

on the allegation that "the Jail refuses to release COVID-positive prisoners who have paid bail (or are otherwise legally entitled to release) until it deems them non-contagious." (Doc. No. 120 at ¶ 183).  As an initial matter, Plaintiffs' argument that Director McDonough adopted an actual policy of over-detention is due to be rejected out of hand.  Plaintiffs do not allege that Director McDonough or any other "decisionmaker possess[ing] final authority to establish municipal policy" for Prince George's County decided to detain COVID-positive prisoners at the Facility despite their purported entitlement to release or established a policy to that effect.  Lane v. Anderson, 660 F. App'x 185, 197 (4th Cir. 2016) (quotation and citation omitted). Because "the Amended Complaint is devoid of factual matter concerning the decisionmaker who implemented" the alleged over-detention policy, the Court need not credit the label of "policy" referenced in Plaintiffs' pleading.  See Lucero v. Early, Civil Action No. GLR-13-1036, 2018 WL 4333745, at *7 (D. Md. Sept. 11, 2018) (dismissing Monell claim due the pleading's failure to allege the policymaking officials who implemented the alleged policy); see also Bell Atl. v. Twombly, 550 U.S. 544, 555 (2007) (a pleading requires more than "labels and conclusions").  The Amended Complaint fails to allege that Director McDonough established a formal policy of over-detention.

Moreover, the Amended Complaint also fails to allege that Director McDonough condoned a custom or practice of over-detention.  Plaintiffs contend

10

that two (2) isolated instances of over-detention occurred in April 2020.  (Doc. No. 135 at 37-38).  Plaintiffs do not allege that Director McDonough knew of the alleged incidents.   The isolated incidents of alleged over-detention far fall short of supporting an inference of "continued inaction in the face of a known history of widespread constitutional deprivations."   Milligan v. City of Newport News, 743 F.2d 227, 229-30 (4th Cir. 1984).[9]  Plaintiffs' over-detention claim is due to be dismissed because they do not adequately allege Director McDonough established or approved a policy, custom, or practice of over-detention.

Even assuming that the Amended Complaint adequately alleged that Director McDonough established or condoned for a policy, custom, or practice of over-detention (it does not), Plaintiffs lack standing to pursue such a claim.  Plaintiffs do not allege they suffered any constitutional deprivation from over-detention.  Furthermore, Plaintiffs do not allege they are COVID-positive and are entitled to immediate release from PGCDOC's custody.  Stated differently, Plaintiffs are not subject to the policy or custom alleged in Count II of the Amended Complaint.

---

[9] Compare Lucero, 2018 WL 4333745, at *9 (dismissing Monell claim based on a single alleged incident) and Peters v. City of Mount Rainier, No. JH-14-00955, 2014 WL 4855032, at *6 (D. Md. Sept. 29. 2014) (dismissing claim because "three solitary examples" were "insufficient, as a matter of law, to demonstrate the existence of an official municipal custom or policy"); with Owens v. Baltimore City State's Attys. Office, 767 F.3d 379, 403 (4th Cir. 2014) (allegations of "reported and unreported cases" and "numerous" similar instances adequately supported Monell claim) and Garcia v. Montgomery Cnty., Civil No. JFM-12-3592, 2013 WL 4539394, at *5 (D. Md. Aug. 23, 2013) (noting that "the complaint alleges that Montgomery County was aware of unconstitutional actions by … towards [other] members of the media").

Because Plaintiffs are not "in immediate danger of sustaining some direct injury as the result" of any alleged custom or policy of over-detention,[10] <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 102 (1983), they allege only a "conjectural" or "hypothetical" risk of harm, and their over-detention claim is due to be dismissed.

## IV. PLAINTIFFS' HABEAS PETITION FAILS TO STATE A CLAIM IN LIGHT OF THE "ENTRENCHED" VIEW OF THE FOURTH CIRCUIT.

The "entrenched" view of the Fourth Circuit holds that a habeas proceeding pursuant to 28 U.S.C. § 2241 does not constitute the proper mechanism for a detainee seeking relief on a conditions-of-confinement claim. <u>Toure v. Hott</u>, --- F.Supp.3d ---, Civil Action No. 1:20-cv-395, 2020 WL 2092639, at *8 (E.D. Va. Apr. 29, 2020); <u>see also</u> <u>Wilborn v. Mansukhani</u>, 795 F. App'x 157, 162-64 (4th Cir. 2019) (per curiam); <u>Rodriguez v. Ratledge</u>, 715 F. App'x 261, 265-66 (4th Cir. 2017) (per curiam); <u>Braddy v. Wilson</u>, 580 F. App'x 172, 173 (4th Cir. 2014) (per curiam). For detainees such as Plaintiffs, a conditions-of-confinement claim falls under § 1983. <u>See</u> <u>Wilborn</u>, 795 F. App'x at 164; <u>Ratledge</u>, 715 F. App'x at 266. Stated differently, if a § 1983 claim would remedy the conditions of confinement alleged by a pretrial detainee, the detainee fails to state a habeas claim.

Here, the Court previously found that "Plaintiffs' habeas claim, at its core, is a challenge to prison conditions." (Doc. No. 84 at 18). Plaintiffs' pleading alleged

---

[10] The current status of the Released Plaintiffs utterly dispels any allegation that they are in "immediate danger" of over-detention.

"the very conditions that, if remedied, would mitigate the risk to all detainees, including the [medically vulnerable] subclass." (Id.). The Court concluded that it "cannot plausibly read this Complaint as bringing" a challenge to the *fact* of Plaintiffs' confinement at the Facility. (Id.). Thus, Plaintiffs' four (4) separate causes of action pursuant to § 1983, not their habeas claim, provides the adequate mechanism for addressing any concerns regarding their conditions at the Facility.

In their Response, Plaintiffs fail to state why the "entrenched" view of the Fourth Circuit does not compel the dismissal of their habeas petition.[11] The Response relies on a district court's memorandum opinion in Coreas v. Bounds, which found that the civil immigration detainees in that action could pursue a habeas petition. Civil Action No. TDC-20-0780, 2020 WL 1663133, at *6-7 (D. Md. Apr. 3, 2020). But the reasoning in Coreas does not apply here for at least three (3) reasons. First, Coreas involved civil immigration detainees, not pretrial detainees like Plaintiffs. Id. at *1. The Coreas court relied on Zadvydas v. Davis, 533 U.S. 678 (2001), and concluded that civil immigration detainees traditionally received recourse to habeas writs. Coreas, 2020 WL 1663133, at *6. However, Zadvydas expressly limited civil immigration detainees' reliance on a habeas petition to

---

[11] Plaintiffs misread the Motion to the extent that Plaintiffs contend that Director McDonough does not challenge the adequacy of the factual allegations in support of the habeas claim. The Motion expressly stated that the Amended Complaint "fails to state a claim" pursuant to § 2241 and quoted from the Court's opinion analyzing the inadequacy of Plaintiffs' factual allegations. (Doc. No. 128-1 at 23-26).

circumstances where the detainee challenged "detention that is without statutory authority." 533 U.S. at 688. Here, Plaintiffs are not civil immigration detainees and do not allege that their detention at the Facility is "without statutory authority."

Second, the Coreas court's conclusion that a plaintiff's request for a release from custody *automatically* brings the request within the province of habeas corpus runs contrary to clear case law. 2020 WL 1663133, at *6. Only an ***actual challenge*** to the fact, duration, or validity of confinement reaches the "heart" of habeas corpus to establish an appropriate § 2241 proceeding. See Toure, 2020 WL 2092639, at *7 (citing Wilborn, 795 F. App'x 157, and Preiser v. Rodriguez, 411 U.S. 475, 484, 487, 498 (1973)). Plaintiffs' request for release from PGCDOC's custody, without more, does not challenge the fact of their confinement.

Third, the Coreas court based its conclusion on a finding that the civil immigration detainees "may have no vehicle by which to seek redress for the constitutional violation they allege" if they did not receive access to § 2241. 2020 WL 1663133, at *7. This rationale clearly does not apply to this action. Plaintiffs' § 1983 claims constitute an adequate vehicle "by which to seek redress" for their allegations. See Wilborn, 795 F. App'x at 164; Ratledge, 715 F. App'x at 266. In short, the reasoning of the Coreas court simply does not apply to this action. Plaintiffs' habeas petition pursuant to § 2241 is due to be dismissed.

## V.   THE AMENDED COMPLAINT FAILS TO STATE A § 1983 CLAIM BASED ON THE LOCKDOWN MEASURES.

The Amended Complaint fails to state a § 1983 claim based on the lockdown measures at the Facility. The Amended Complaint does not allege *Plaintiffs'* current circumstances under the lockdown measures. Notably, the Amended Complaint alleges that a small percentage of the detainees "reported" widely varying circumstances under the lockdown measures at the Facility. (Doc. No. 120 at ¶ 189). The Amended Complaint does not allege that Plaintiffs experienced the same type of circumstances and leaves the Court to speculate Plaintiffs' conditions under the lockdown measures. The Response cites to generalized allegations regarding the individual Plaintiffs' circumstances in March and April 2020, (Doc. No. 135 at 25, n. 28), but Plaintiffs acknowledge that the lockdown measures continued to evolve as the threat from COVID-19 waned.[12] (Doc. No. 120 at ¶ 191). Stated differently, the Amended Complaint fails to allege that Plaintiffs face "a substantial risk of serious harm" from the lockdown, Porter v. Clarke, 923 F.3d 348, 360 (4th Cir. 2019) (internal quotation omitted), because it does not allege Plaintiffs' circumstances at the time they brought their § 1983 claim based on the lockdown measures at the Facility.[13] The Amended Complaint fails to allege that Plaintiffs are

---

[12] The Response also cites to statements from Craig Haney and Robert Sapolsky, (Doc. No. 135 at 19), but those statements also date from April 2020, i.e. they provide no insight into the current circumstances related to the lockdown measures.

[13] Of course, the Released Plaintiffs were not even in PGCDOC's custody at the time that Plaintiffs brought Count IV.

experiencing "solitary confinement" in violation of their rights given the extraordinary circumstances created by the pandemic.  Count IV of the Amended Complaint is due to be dismissed.

## VI.    THE AMENDED COMPLAINT FAILS TO STATE A DUE PROCESS CLAIM.

The Amended Complaint fails to state a due process claim.  With respect to Plaintiffs' substantive due process claim for pretrial detainees,[14] Plaintiffs concede that PGCDOC did not establish the current lockdown measures with an intent to punish detainees.  (Doc. No. 135 at 26-27).  To move forward with their substantive due process claim, Plaintiffs must allege that the current lockdown measures experienced by the Plaintiffs are "not reasonably related to a legitimate nonpunitive government objective…." Williamson v. Stirling, 912 F.3d 154, 175 (4th Cir. 2018).

Plaintiffs admit that PGCDOC implemented lockdown measures for the purpose of "preventing the spread of COVID-19."  (Doc. No. 135 at 28).  For the reasons stated in Section V above, the Amended Complaint fails to allege *Plaintiffs'* current circumstances under the lockdown measures.  Given this failure to clearly allege Plaintiffs' circumstances, the Amended Complaint does not adequately allege that those circumstances are "patently excessive" in relation to the objective of preventing the spread of COVID-19 at the Facility.  Williamson, 912 F.3d at 178.

---

[14] Plaintiffs clarified their pleading and concede they do not bring a substantive due process claim on behalf of post-conviction detainees at the Facility.  (Doc. No. 135 at 29, n. 34).

The fact that "the lockdown measures … worked to contain the spread of COVID-19," (Doc. No. 84 at 13), underscores Plaintiffs' failure to allege how their circumstances are not reasonably related to preventing the spread of COVID-19. Plaintiffs' substantive due process claim is due to be dismissed.

Plaintiffs' procedural due process claims also fail.  As stated above, the Amended Complaint does not clearly allege a failure to provide *Plaintiffs* with procedural safeguards related to lockdown measures.  The pleading only alleges generalized descriptions of conditions, including review procedures, related to the lockdown measures without directly alleging whether Plaintiffs experienced those conditions.  In short, the Amended Complaint fails to move Plaintiffs' procedural due process claims from possible to plausible.  See Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

Moreover, Plaintiffs' procedural due process argument utterly fails to acknowledge the well-established rule that emergency situations justify the modification of due process procedures.  "Maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained rights of both convicted prisoners and pretrial detainees." Bell v. Wolfish, 441 U.S. 520, 547 (1979).  "Accordingly, [the Supreme Court has] held that even when an institutional restriction infringes a specific constitutional guarantee, … the practice must be evaluated in the light of the central

17

objective of prison administration, safeguarding institutional security." Id. at 547. The pandemic unquestionably required Prince George's County and PGCDOC to institute a state of emergency. (Doc. No. 120 at ¶¶ 51-56). In emergency situations, such as the pandemic, courts consistently recognize that officials do not violate procedural due process if they place someone in lockdown for extended periods of time prior to, or even without, a hearing as a response to the emergency.[15] The pandemic required lockdown measures to prevent the spread of COVID-19 at the Facility, and administrative hearings prior to instituting those measures was impossible. Under such circumstances, a modification of the due process procedures at the Facility did not violate procedural due process. Plaintiffs' substantive and procedural due process claims are due to be dismissed.

## VII.   THE PLRA PROHIBITS PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF.

In the Response, Plaintiffs noticeably fail to explain how the allegations in the Amended Complaint support their sweeping requests for broadly applicable, highly intrusive injunctive relief. Director McDonough pointed to five (5) examples of how Plaintiffs' request for injunctive relief grossly exceeds the limits set by the PLRA in

---

[15] See, e.g., Hayward v. Procunier, 629 F.2d 599, 599-603 (9th Cir. 1980) (five-month lockdown at California's San Quentin Prison did not trigger the right to a due process hearing because of extensive violence at the prison); Negrete v. Lewis, No. C11-3436 RS (PR), 2012 WL 4903001, at *2 (N.D. Cal. Oct. 16, 2012) ("A prison lockdown may be imposed where warranted by a state of emergency."); Jones v. Marquez, 526 F. Supp. 871, 881 (D. Kan. 1981) (granting summary judgment to officials because a "serious emergency" existed warranting extended placement of the plaintiffs in administrative segregation prior to a hearing).

light of Plaintiffs' allegations and claims.  (Doc. No. 128-1 at 38-39).  Plaintiffs do not cite to any allegations in the Amended Complaint which would support those requests for relief.  Rather than engaging with Director McDonough's argument directly, Plaintiffs contend that adjudicating their specific requests for relief at this stage of the proceedings would be "premature" because "the parties are in the middle of fact discovery."  (Doc. No. 135 at 41).

Plaintiffs' argument that dismissal of their requests for injunctive relief would be "premature" misses the point.  Even assuming that Plaintiffs' claims are not dismissed in full (they should be), the claims will not support Plaintiffs' requests for relief as a question of law pursuant to the PLRA and relevant case law.  Plaintiffs were the masters of their pleading.  If they desired the relief requested in the Amended Complaint, the law imposed on them the burden of adequately pleading allegations and claims supporting such relief.  See generally Silvers v. Iredell Cnty. Dep't of Social Servs., Civil Action No. 5:15-CV-00083-RLV-DCK, 2016 WL 427953, at *6 (W.D.N.C. Feb. 3, 2006) ("A plaintiff carries the burden of stating his claim and proving that he is entitled to the relief sought—from the commencement of the action through its termination") (considering the adequacy of a complaint in ruling on a motion for default judgment).  Plaintiffs failed to meet this burden.

Plaintiffs are not entitled to pursue discovery related to their requests for injunctive relief which remain unsupported by their pleading.  Indeed, Plaintiffs'

evident intention to pursue sweeping discovery counsels in favor of dismissing their requests for injunctive relief to properly limit discovery to the scope of their claims, rather than their extraordinarily broad, unsupported demands for injunctive relief. Plaintiffs' request for injunctive relief is due to be dismissed as exceeding the scope of possible remedial relief available to Plaintiffs.

<u>CONCLUSION</u>

For the foregoing reasons, as well as those set forth in Director McDonough's Motion, Director McDonough respectfully requests that this Court issue an Order dismissing the Amended Complaint in its entirety for lack of subject-matter jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6) or, alternatively, granting summary judgment in favor of Director McDonough pursuant to Rule 56.

Respectfully submitted,

**RHONDA L. WEAVER
COUNTY ATTORNEY**

**ANDREW J. MURRAY
DEPUTY COUNTY ATTORNEY**

/s/ *Shelley L. Johnson*

Andrew J. Murray, Fed. Bar No. 10511
Shelley Lynn Johnson, Fed. Bar No. 15853
Ann Elizabeth Koshy, Fed. Bar No. 19333
**PRINCE GEORGE'S COUNTY OFFICE OF LAW**
Wayne K. Curry Administration Building
1301 McCormick Drive

Suite 4100
Largo, Maryland 20774
Telephone: (301) 952-5225
Facsimile: (301) 952-3071
ajmurray@co.pg.md.us
sljohnson@co.pg.md.us
aekoshy@co.pg.md.us

William R. Lunsford (*pro hac vice*)
Stephen C. Rogers (*pro hac vice*)
Kenneth S. Steely (*pro hac vice*)
**MAYNARD, COOPER & GALE, PC**
655 Gallatin Street
Huntsville, AL 35801
Telephone: (256) 512-5710
Facsimile: (256) 512-0119
blunsford@maynardcooper.com
srogers@maynardcooper.com
ksteely@maynardcooper.com

Filed: 08/21/20

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served upon all attorneys of record in this matter, including without limitation the following, by the Court's CM/ECF system on this 21st day of August, 2020:

Cadene Russell Brooks
Edward Henderson Williams, II
**WILMER CUTLER PICKERING**
**HALE AND DORR LLP**
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6115
cadene.brooks@wilmerhale.com
ed.williams@wilmerhale.com

Katherine Chamblee Ryan
Olevia Boykin
Ryan Downer
Elizabeth Ann Rossi
**CIVIL RIGHTS CORPS**
1601 Connecticut Avenue
Suite 800
Washington, DC 20009
Telephone: (610) 931-7715
Facsimile: (202) 605-8030
katie@civilrightscorps.org
olevia@civilrightscorps.org
ryan@civilrightscorps.org
elizabeth@civilrightscorps.org

/s/ *Shelley L. Johnson*
Of Counsel